1813.

Walsh
vs
Gilmor

---

WALSH vs. GILMOR, *et al.*

APPEAL from *Baltimore* County Court. This was an action of *assumpsit*, brought in the general court, by the defendant, relative to a contract for the sale of Brandy, and for submitting their dispute to arbitrators—*Held*, that the whole correspondence on the subject, if produced, would be received in evidence, so far as the same might be explanatory of the terms of the reference, and what was intended to be submitted by the parties to the arbitrators. That if the plaintiff would not produce all the letters, the defendant might give evidence of their contents, so far as they related to the reference. But if the letters were not produced, the jury ought not to presume that they would, if produced, operate against the plaintiff, and go to prove that the terms of the reference were different from those declared upon by him.

A paper signed by the defendant as a submission to reference, is competent evidence, although the plaintiff did not produce and read to the jury the letters of the defendant upon the subject of the reference.

Whether the counsel for the plaintiff is bound to answer whether he has or has not in his possession, certain letters written by the defendant to the plaintiff, relative to the subject in dispute?

If an award, made in pursuance of a submission by the parties, exceeds the subject matter referred, it does not annul the original contract, which is the subject of the reference, further than the award pursues and is comformable to the terms of the reference.

The terms and stipulations between the parties on which their matters in dispute were to be submitted to reference, are matters of fact to be determined by the jury

As to what is legal evidence of a sale made at auction—The entries made by a clerk to the auctioneers are not the best evidence.

Damages cannot be recovered for noncompliance with an award, except so far as the award is comformable to the submission

If part only of a subject matter is referred to, and awarded upon by arbitrators, the party is at liberty to comply with the award, without also complying with all the terms of the original agreement.

The court will not permit a statement of facts, which is irrelevant to the subject matter, to be added to a bill of exceptions taken at the trial of a cause.

DECEMBER.

Where the plaintiff had produced in evidence certain letters written to him by the

1813.

Walsh
vs
Gilmor

appellees against the appellant. The declaration contained two counts. In the *first count* it was stated, that whereas the plaintiff, on the 27th of July 1795, and long before and after, were joint partners in trade and commerce, trading under the name and firm of *Robert Gilmor* and company: And whereas the plaintiffs were the owners of a quantity of Brandy, to wit, 102 pipes, then shipped on board a certain ship called *The Ann*, and then on her voyage from *Bourdeaux*, in *France*, to the port of *Baltimore*, to wit, at the county aforesaid: And whereas on the said day and year aforesaid, at the county aforesaid, it was agreed between the plaintiffs, by the name of *Robert Gilmor* and company, and the defendant, that the defendant would purchase of the plaintiffs whatever Brandy they might have on board the said ship called *The Ann*, from *Bourdeaux*, supposing the quantity of 90 pipes, or thereabouts, at the rate of one dollar and fifty cents per gallon, whatever the proof might be, provided the said Brandy arrived at the said port of *Baltimore*, in the county aforesaid, in six weeks from the said day and year last aforesaid. The defendant also agreed to give the plaintiffs his, the defendant's note, with *John Carrere* as his security, or his the defendant and *John Carrere's* notes, payable at three and four months, for the amount of the said Brandy, the date of the said notes to commence from the delivery of the said Brandy by the plaintiffs to the defendant. And the plaintiffs do aver, that the said Brandy arrived in the port of *Baltimore*, in the county aforesaid, within six weeks after the day and year last aforesaid, to wit, on the 1st day of August 1795, and that the plaintiffs on the 5th day of Au-

Where the court refused to direct the jury, that the evidence offered was sufficient for them to find for the plaintiff in an action upon an award for a nonacceptance therewith.

An award made in pursuance of a submission to arbitrators, either separate from, or connected with the original contract, is not legal or competent evidence in support of a count in the declaration founded upon the original contract

Where a party refuses to keep goods according to contract, after they have been delivered to him under the contract, and the other party takes them from his warehouse with his knowledge and acquiescence, for the purpose of sale at auction, &c, the contract is not rescinded

In actions founded on contracts, the contract must be set out either in the words in which it is made, or according to the legal effect; and contracts being in their nature entire, if the contract proved, and that agreed upon, be different in any part, the variance is fatal

Where an award was considered as being within the submission of the matter in controversy

Whatever is alleged in a declaration as inducement and is not impertinent and foreign to the action must be proved as alleged; and when a contract is alleged and described, a variance is equally fatal, whether the action be upon the contract itself or upon some collateral matter

Where an award directed that the defendant should give an endorser, "as per agreement submitted to the arbitrators and acknowledged by the parties," and though it may be susceptible of being made certain and good by reference to the agreement to which it relates, if there be no sufficient averment in the declaration by which the defect is cured, both the declaration and award are bad

The omission of an averment is sometimes aided after verdict, on the ground that every thing may be presumed to have been proved, which was necessary to sustain the action; but where the bill of exceptions contains all the evidence offered to the jury, and upon which the court are required to direct them, that the plaintiff is not entitled to recover, the verdict produces no such effect

gust in the year aforesaid, at, &c. afterwards delivered the said Brandy to the defendant. And whereas afterwards, to wit, on the 19th day of August, in the year aforesaid, at, &c. certain differences and disagreement took place between the plaintiffs and the defendant, of and concerning the said Brandy, for the settlement and determination thereof the plaintiffs, by the name of *R. G. & Co.* and the defendant, afterwards, to wit, on the 19th day of August 1795, at, &c. submitted themselves to the award of *John Stricker* and *John Holmes,* arbitrators, by them the plaintiffs and the defendant indifferently chosen and named, to award, order and adjudge, respecting the difference and disagreement between them the plaintiffs and the defendant, of and concerning the said Brandy; and in case the said *John Stricker* and *John Holmes* should differ in opinion, then they the said *Stricker* and *Holmes* may choose some third person. Upon which the defendant afterwards, that is to say, on, &c. at, &c. in consideration that they the plaintiffs, at the special instance and request of the defendant, assumed upon themselves, and to the defendant, then and there faithfully promised to the defendant, that they, the plaintiffs, would well and faithfully perform and fulfil the award, order and determination, of them the said *Stricker* and *Holmes,* so as aforesaid to be made on the part of them, the plaintiffs, to be performed and fulfilled, the defendant upon himself assumed, and to the plaintiffs then and there faithfully promised, that he the defendant would well and faithfully perform and fulfil the award, order and determination, of the said *Stricker* and *Holmes,* so as aforesaid to be made, on the part of him, the defendant, to be performed and fulfilled. And the plaintiffs in fact say, that the said *Stricker* and *Holmes,* on the 22d of August, in the year aforesaid, at, &c. took upon themselves the burthen of the said award, and then and there, in due manner, made and gave their award and final determination, in writing, of and concerning the premises so submitted to them as aforesaid, and by the said award did then and there award and order, that the defendant do choose, and that he is bound to take, ninety pipes, or ten thousand gallons, out of the Brandy delivered him by *R. G. & Co.* and that he ought to give an endorser, as by the agreement submitted to the said *Stricker* and *Holmes,* and which said agreement was acknowledged by the plaintiffs and the defendant, to the

1813.

Walsh
vs
Gilmor

said *Stricker* and *Holmes;* of all which premises the defendant afterwards, to wit, on, &c. at, &c. had notice; whereby the defendant was bound to choose the said 90 pipes, or 10,000 gallons, out of the Brandy delivered to him by the said *R. G.* & Co. and to give an endorser, according to the agreement aforesaid between him the defendant and the plaintiffs, and acknowledged by them as aforesaid and according to the form and effect of the said award, and the promises and undertakings of the defendant so made as aforesaid. Yet the defendant, not regarding his said agreement, nor his said promises and undertakings, so by him in this behalf made, but contriving, &c. the plaintiffs, &c. hath not yet chosen the said 90 pipes, or 10,000 gallons, out of the Brandy delivered to him the defendant, by the plaintiffs, nor hath he the defendant given an endorser, as by the agreement aforesaid made between the defendant and the plaintiffs, and acknowledged by them as aforesaid, according to the form and effect of the said award, although the defendant was thereto requested by the plaintiffs, to wit, on, &c. and often afterwards; but to choose the said 90 pipes, or 10,000 gallons, &c. delivered, &c. according to the said award of, &c. or to give an endorser, &c. the defendant hath hitherto wholly refused, &c. The *second count.* And whereas also, the plaintiffs, on the said 27th of July 1795, and long before and after, were partners, &c. And whereas the plaintiffs were owners of a quantity of Brandy, to wit, 102 pipes, then shipped on board a certain ship called *The Ann,* and then and there on her voyage from *Bourdeaux,* in *France,* to the port of *Baltimore,* to wit, at the county aforesaid—And whereas on the day, &c. it was agreed between the plaintiffs, by the name of *R. G.* & Co. and the defendant, that he the defendant would purchase of the plaintiffs whatever Brandy they the plaintiffs might have on board the said ship called *The Ann,* from *Bourdeaux,* supposing the quantity of 90 pipes, or thereabouts, at the rate of one dollar and fifty cents per gallon, whatever the proof might be, provided the said Brandy arrived at the said port of *Baltimore,* in the county aforesaid, in six weeks from the said day and year last aforesaid. And the defendant also agreed to give the plaintiffs his the defendant's note, with *J. C.* as his security, or his the defendant and *J. C's* notes, payable at 3 and 4 months, for the amount of the said Brandy; the dates of the said notes to

commence from the delivery of the said Brandy by the plaintiffs to the defendant. And the plaintiffs do aver, that they were owners of the said 102 pipes of Brandy on board the said ship called *The Ann,* on her voyage from *Bourdeaux,* in *France,* to the port of *Baltimore,* and that the said 102 pipes of Brandy afterwards, and within six weeks from the said 27th of July 1795, to wit, on the 1st of August, in the year last aforesaid, arrived in the port of *Baltimore,* &c. And the plaintiffs do aver, that they, confiding in the promise and undertaking of the defendant, made as aforesaid, afterwards, to wit, on the 5th of August, in the year aforesaid, at, &c. delivered the said 102 pipes of Brandy to the defendant. Nevertheless the defendant, &c. refused to give his note to the plaintiffs, with the said *J. C.* as his security, or to give the notes of the defendant and *J. C.* to the plaintiffs, payable at 3 and 4 months, for the amount of the said Brandy, or for the amount of any part thereof, the date of the said notes to commence from the delivery of the said Brandy, according to the agreement aforesaid between the defendant and the plaintiffs, although the defendant was afterwards requested so to do by them the plaintiffs, on the 24th of August 1795, and often afterwards, at, &c. But the defendant so to do hath hitherto wholly refused, and still doth refuse, to the damage, &c. The defendant pleaded the general issue.

1. *The first bill of exceptions.* At October term 1803, in the general court, the plaintiffs at the trial gave in evidence a contract entered into by the defendant, being a letter dated the 27th of July 1795, addressed by him to the plaintiffs; it was as follows: "I agree to purchase from you whatever Brandy you may have on board *The Ann* from *Bourdeaux,* supposing the quantity 90 pipes, or thereabouts, at the rate of one dollar and fifty cents per gallon, whatever the proof may be, provided it arrives here in six weeks from this date. I agree also to give you my note, with *John Carrere* as security, or mine and *John Carrere's* note, payable at 3 and 4 months, for the amount of the said Brandy; the date of the notes to commence from the delivery of the said Brandy." The plaintiffs also gave in evidence, that the ship *Ann,* in the contract mentioned, arrived at the port of *Baltimore* within six weeks from the date of the contract, having a cargo of 102 pipes of Bran-

1813.

Walsh
vs
Gilmor

dy on board, the property of the plaintiffs, and that the Brandy was received by the defendant's clerk, according to his directions, in his warehouse, about the 1st of August 1795.' That the defendant, after examining the Brandy, refused to comply with his contract, and in consequence thereof the dispute between the plaintiffs and the defendant, concerning the Brandy, was submitted to *John Stricker* and *John Holmes*. And the plaintiffs offered in evidence the following written submission, executed by the defendant, on the 19th of August 1795, being a letter addressed by him to the plaintiffs: "I agree that Col. *Stricker* and Mr. *John Holmes* should be judges in the dispute respecting the Brandy, and in case of a disagreement in opinion between those two gentleman, that they may chuse a third." And that the arbitrators took upon themselves the burthen of arbitrating between the parties, and after full hearing of each party, made the following award: "We the subscribers, being called upon to arbitrate a difference between Messrs. *Robert Gilmor* & Co. and Mr. *Robert Walsh*, relative to a sale of Brandy by the former to the latter—after hearing the allegations of the parties, considering the contract, and all other circumstances relating thereto, do award that Mr. *Walsh* do chuse, and that he is bound to take, ninety pipes, or 10,000 gallons, out of the Brandy delivered him by *Robert Gilmor* & Co. and that he ought to give an endorser, as per agreement submitted to us, and acknowledged by the parties.

Jno. Holmes,
John Stricker.

*Baltimore*, August 22, 1795."

The plaintiffs further offered evidence, that after the award was made and delivered to the defendant, they applied to him to comply with it, and that he refused to do so, declaring that he would not take any of the Brandy according to the terms of the contract and the award; and that thereupon the plaintiffs informed the defendant, that unless he took the Brandy, according to the contract and award, they would send the Brandy to public vendue, and there have it sold on his account, and hold him answerable for the difference between the price for which it should sell, and the sum which, by the contract, the defendant was to give for it. That the plaintiffs did accordingly send the Brandy to Messrs. *Yates* and *Campbell*, auc-

1813.

Walsh
vs
Gilmor

tioneers in the city of *Baltimore*, by whom it was sold at public auction for a less sum than the defendant had contracted to give for it. The defendant then offered evidence, that the communications between the plaintiffs and himself respecting the contract, were by letters from one to the other, and not in person: That the proposition for referring the dispute between them was first made by the plaintiffs to him, by letter from *R. G.* one of the plaintiffs, dated the 17th of August 1795, as follows: "I received your note of this morning, and observe the new ground you have taken as a reason for not complying with your contract. It will answer no good end for me to enter into a discussion with you on the business, as it is not probable that it would tend to a settlement of it. You are, as a man of honour and a merchant, bound to abide by your contract, unless you can show such reasons as will justify a noncompliance; those now adduced appear to me totally inadequate to this purpose. There is then but one course left, which is, to lay our several pretensions before indifferent men, and to abide by their determination. If you agree to this, let two men be named, they choosing a third, and let us enter in bonds for abiding by their award. Let me have an answer as early this morning as convenient, as I want the business terminated without loss of time, that something may be immediately done with the Brandy." That this letter speaks of one from the defendant to the plaintiffs; and that this letter from the plaintiffs produced an answer from the defendant to them, of the 18th of August 1795, in which they offered to prove that he consented to a reference, and speaks of the terms of the submission, and refuses to let the arbitrators determine whether the defendant shall or shall not give an endorser to the plaintiffs; which facts are inferred from the following letter of *R. G.* one of the plaintiffs, to the defendant, dated the 18th of August 1795: "I received your's of this morning. The gentlemen who may be appointed will judge of every circumstance you have to offer as a justification for your refusal to take the Brandy. If they think they are valid, I shall cheerfully acquiesce. But on the other hand, should they determine that you are bound to take the whole, or a part of the Brandy, I cannot doubt for a moment your acquiescence upon the principles of our contract. You voluntarily named Mr. *Carrere* as the endorser of your notes. I could

not doubt but he had authorised you so to do; for of his own accord he told me that he would be security for you if you purchased the Brandy. I therefore will not harbour a thought of a refusal of this kind, as I think it would be injurious to your honour. I shall name Col. *Smith*, or Mr. *Patterson*, if you have no objection; or you may choose which you like, and name to me two gentlemen, and I will choose one of them. For obvious reasons you will see the necessity of having this business early finished, and I beg you will speak to the gentleman you may choose this afternoon, as I shall, provided you inform me you have no objection to those I have named, so that they may go upon it next day." The defendant also read in evidence another letter of *R. G.* one of the plaintiffs, to the defendant, dated 19th of August 1795, and which was as follows: "I cannot believe that you will refuse to comply with your own engagement, provided indifferent men say you ought; however, you will do in that as you think proper. I have no objection to any of the gentlemen you have named, and therefore name Col. *Stricker*. As you have named the whole of them I suppose you can have no objection to Mr. *Holmes* being the other. If this is agreeable, let them be requested to serve to-day. and they may meet on the business to morrow." That this last letter, produced the note from the defendant to the plaintiffs, and by them herein before stated as having been written on the 19th of August 1795. The defendant then proved by *Robert Gilmor, Junior*, a witness summoned and sworn by the plaintiffs, that the above mentioned letters from the defendant to the plaintiffs, of the dates of the 17th and 18th of August 1795, did relate to the matter in dispute between the parties, and did also relate to the agreement between the plaintiffs and the defendant, for submitting such matter to the arbitrament of the persons before named, and that the letters from the defendant to the plaintiffs were now here in court, and in the possession of the counsel for the plaintiffs. The defendant then prayed the court to make an order upon the counsel for the plaintiffs to produce those letters, for the purpose of having the same read to the jury as evidence.

Done, J. (*Sprigg*, J. concurred,) *(a)*. The Court are of opinion, that the whole correspondence on this subject,

*(a) Chase* Ch. J. owing to indisposition, did not attend.

if produced, will be received in evidence so far as the same shall be explanatory of the terms of the reference, and what was intended to be submitted by the parties; and that if the plaintiffs' counsel will not produce the letters from the defendant to the plaintiffs, the defendant may give evidence of the contents of the same, so far as they relate to the reference. The plaintiffs excepted.

2. *The second bill of exceptions.* The court having received evidence that certain letters, bearing date on the 17th, 18th and 19th of August 1795, respectively, passed from the defendant to the plaintiffs, and from the plaintiffs, relating to the agreement between them for submitting the matter in dispute between them (upon which this suit is founded,) to reference; in virtue of which submission, the award in this suit declared upon was made; and the defendant having on his part produced the letters from the plaintiffs to him, and having proved by the admission stated in the former bill of exceptions, and also offered to prove by the testimony of *Robert Gilmor, junior,* (who deposed that he had seen those letters in *Baltimore* about ten days ago, and had them in his possession, and delivered them over at that time to one of the counsel for the plaintiffs,) that the letters from him, the defendant, to the plaintiffs, are in the possession of the plaintiff's counsel, and now in court here: And the court having decided that those letters from the defendant to the plaintiffs are proper and competent evidence to be produced and read to the jury—and the plaintiffs having refused to produce any, except that stated to have been written on the 19th of August 1795, the defendant then prayed the court to direct the jury, that if they are satisfied that the letters from the defendant to the plaintiffs, of the 17th and 18th of August 1795, do relate to the agreement for submitting the dispute to reference, and that said letters are in the possession of the counsel for the plaintiffs and in their power to be produced here, and the same are not produced, that then the jury may and ought to presume, that the same, if produced, would operate against the plaintiffs, and go to prove that the terms of the submission to reference, agreed upon between the parties, were different from those declared upon by the plaintiffs.

*Mason,* and *W. Dorsey,* for the Defendant, cited 2 *Esp. Dig.* 780, 782; and *Armory vs. Delamine,* 1 *Stra.* 505.

1815.

Walsh
vs
Gilmor

*Purviance* and *S. Chase*, jr. for the plaintiffs, referred to the act of 1798, *ch*. 84.

THE COURT refused to give the direction prayed for. The defendant excepted.

3. *The third bill of exceptions.* The defendant then prayed the court to direct the jury, that the paper dated the 19th of August 1795, and admitted to be written and signed by the defendant, and by him sent to the plaintiffs. and produced and read by the plaintiffs to the jury, was not admissible evidence, and ought not to be regarded by them, unless the plaintiffs also produced and read to the jury the letters of the defendant to the plaintiffs upon the subject of the reference, dated the 18th and 19th of August 1795.

*Mason*, for the Defendant, cited 2 *Esp. Dig.* 780.

THE COURT refused to give the direction. The defendant excepted.

4. The defendant's counsel having sworn *John Purviance*, Esquire, one of the plaintiffs' counsel, offered to put to him the following question: "Have you in your possession the letters mentioned to have been written by the defendant to the plaintiffs of the 18th and 19th of August 1795?" To this question being put to the witness, the counsel for the plaintiffs objected.

DONE, J. It is not proper for the counsel to answer the question, unless he is willing to answer it.

SPRIGG, J. I think the question ought to be answered.

5. *The fourth bill of exceptions.* The plaintiffs having given in evidence the contract before mentioned, then gave in evidence the following letter from the defendant to the plaintiffs dated the 17th of August 1795: "When I agreed to purchase the Brandy which you should receive by the ship *Ann*, at the rate of one dollar and fifty cents p. gallon, it was intended by Mr. *Gilmor* and myself that it should be of the quality generally received from *Bourdeaux*, and called *Bourdeaux Brandy*; that the quantity was about 90 pipes; and under an assurance from Mr. *Gilmor* that no more Brandy would arrive in the ship, but *that which was consigned* to your house, to wit, the *ninety pipes*, and a small quantity of old Cogniac,

which Mr. *Gilmor* had ordered for his own use, and the use of two other friends—I therefore calculated that the amount in money of the purchase would be from 14 to 15,000 dollars, counting the guage of the *Bourdeaux* pipes, as usual, not more than 100 to 110 gallons, and had prepared an endorser for my notes accordingly. Being in *Philadelphia* when the *Ann* arrived, and the Brandy landed, it was received in my warehouse—On my return home, two or three days after it was landed, and on examining it, I found the quality *not Bourdeaux* Brandy; the *quantity* about one half more than was expected, and about 50 pipes of Brandy offered for sale in the town, *in other hands,* which were imported in the *Ann.* I therefore inform you, that I do not hold myself bound to the purchase, because the *quality* is not *Bourdeaux* Brandy; the *quantity* is much more than I counted upon, or had a right to count upon, and because a considerable quantity has been imported in the ship, and put into the market, more than that received by your house." The plaintiffs also gave in evidence the letter from them to the defendant, dated the 17th of August 1795, as herein before stated, and also the following letter from the defendant to the plaintiffs, dated the 18th of August 1795: "In your note of yesterday you say I have taken a new ground as a reason for my not complying with my contract, and that as a man of honour and a merchant, I am bound to abide by my contract, unless I can show such reasons as will justify a noncompliance, and that, to you, those adduced appear totally inadequate to the purpose—and you observe, that there is but one way left, which is, to lay our several pretensions before indifferent men, and to abide by their determination, and if I agree, to let you know, that two men may be named, and let us enter into bonds for abiding by their award. In answer, I observe, that I have taken no new ground; that my objections are true, two of them *you* will not, I believe, deny—those are, that the quantity is more than about ninety pipes, and that you assured me no other Brandy would be imported in the ship. I am not afraid to meet the decision of indifferent judges; they may be named when you please; and as to our entering into bonds, I feel myself at a loss to know what I should bind you to. If my objections are considered as sufficient to clear me from being bound to the purchase, I have then no other claim on you, but to pay

for the porterage of the Brandy to my warehouse, and for your doing so, I desire no bond. If the gentlemen who may be chosen would say that my objections are not well founded, and that, therefore, I must be bound to the purchase of the Brandy, I shall agree; so far as relates to any act within my own power; but I must observe, it may not be in my power to obtain the endorser you called for." The plaintiffs also gave in evidence the letter from them to the defendant, dated the 18th of August 1795, herein before stated; and also the following letter from the defendant to the plaintiffs, dated the 19th of August 1795: "I repeat, that if it is judged that I shall be obliged to keep the Brandy, or any part of it, which I think scarcely possible, I will offer you no endorser. I do believe that neither Gen. *Smith* or Mr. *Patterson* would act on this occasion, as I suppose they would consider themselves not conversant enough with Brandies to determine whether this in question is *Bourdeaux* or Straights Brandy; either of these gentlemen could very readily discover that this Brandy is not as good as they are accustomed to use, but not being in habits, perhaps, of observing nicely the different qualities, would be at a loss to give your's a name. I therefore object to either of these gentlemen; and propose for your choice of one, three gentlemen, dealers in the article—they are Mr. *John Holmes*, Col. *Stricker*, and Mr. *Engelhard Yeiser*." The plaintiffs also offered in evidence the letter from them to the defendant, dated the 19th of August 1795, herein before stated; also the submission entered into after the letters, dated the 19th of August 1795, and herein before stated; and also the award made in pursuance thereof. The plaintiffs then prayed the direction of the court to the jury, that the award was authorised by the submission, and within the terms of it.

*Martin*, (Attorney-General,) for the Plaintiffs, cited *Green vs. Warren*, 1 *Blk. Rep.* 475.

DONE, J. The court are of opinion, that the terms and stipulations between the parties, on which their matters in dispute were to be submitted to reference, are matters of fact to be determined by the jury, on evidence adduced to them. The court, therefore, cannot give the direction prayed for by the counsel of the plaintiffs. The plaintiffs excepted.

6. *The fifth bill of exceptions.* The plaintiffs further proved, that on the 12th of October 1795, they drew the following written order on the defendant, to deliver the Brandy to *Yates* and *Campbell*: "You will deliver Messrs. *Yates* and *Campbell* the 101 pieces of Brandy, and you will account with me for the piece that was staved. My son *Robert* will call upon you to-day or to-morrow for that purpose." That in pursuance of that order, the Brandy was delivered on the 12th of October 1795, to *Yates* and *Campbell*, and by them sold at public auction, by order of the plaintiffs, on the 16th of October 1795. The plaintiffs then produced, and offered to read to the jury, a paper purporting to be the original list or memorandum, upon which was entered the different casks containing the Brandy, and upon which the entries were afterwards made that were transferred to the books of *Yates* and *Campbell*, the persons to whom the same were sold by *Yates* and *Campbell*, and the prices at which the same were sold; and proved that the same was made out in the handwriting of one —————, *Patrick*, who at that time acted as clerk of *Yates* and *Campbell*, and he being present at the sale, made out the same by their order; and that *Patrick* was now dead. To the reading of this paper to the jury, the defendant objected, on the ground of its being inadmissible evidence.

DONE, J. The court are of opinion, that the objection, is not a good one, and they permitted the paper to be read to the jury. The defendant excepted,

7. The plaintiffs then prayed the opinion of the court, and their direction to the jury, that if the jury should believe that no part of the contract was submitted to the arbitrators, except whether the defendant should take any, and what quantity of the Brandy, that then the award made cannot operate to change, alter or annul, the contract, either as to the price to be paid, the time when the payments were to be made, or the manner in which the payments were to be secured, those parts of the contract not being submitted to the arbitrators,

DONE, J. The court are of opinion, that the award does not destroy or annul the original contract between the parties, further than the award pursues, and is conformable to the terms of the reference,

The court are also of opinion, that the plaintiffs cannot on the first count in their declaration recover damages, except for a noncompliance with the award, so far as the same is conformable to the submission.

8. *The sixth bill of exceptions.* The plaintiffs offered in evidence, that the defendant, on the 27th of July 1795, entered into a contract with the plaintiffs, by the two following letters: [The first being a letter from the plaintiffs to the defendant, and the other from the defendant to the plaintiffs.] "Agreeable to our promise, we now conclude on selling you whatever Brandy we may have on board the *Ann* from *Bourdeaux*, upon the terms you proposed; that is, you are to pay us at the rate of one dollar and fifty cents per gallon for the whole, which we estimate at about 90 pipes, (exclusive of some old cogniac we have on board which is not meant to be sold,) whatever the proof may be, provided the ship arrives in six weeks from this time. On the delivery of the Brandy you are to give us your and Mr. *J. Carrere's* notes for the whole, at 3 and 4 months from the commencement of the delivery—Your agreeing to the preceding terms will be binding on," &c. Then the other letter from the defendant to the plaintiffs was dated the 27th of July 1795, and is before stated in the *first* bill of exceptions. The plaintiffs also offered in evidence, that the said vessel did arrive within six weeks, having on board 13,025 gallons, equal to 124 pipes of Brandy, which in the absence of the defendant was received at his warehouse according to the defendant's directions. They also offered the several letters which passed between the plaintiffs and defendant, herein before set forth, dated the 17th, 18th, and 19th of August 1795; also the submission to the arbitrators and their award; and gave in evidence that a copy of the award was delivered to the parties. The plaintiffs then prayed the opinion of the court, and their direction to the jury, that supposing no part of the contract was submitted to the arbitrators, except whether the defendant should take any and what quantity of the Brandy, in that case the defendant by the award was bound to take 90 pipes, or 10,000 gallons, of the Brandy, but at the same time was not by the award entitled to take the same without complying with the terms of

the contract as to the price, the times of payment, and the manner in which the payment was to be secured.

SPRIGG, J. (Done, J. not present,) refused to give the direction prayed for. The plaintiffs excepted.

9. *The seventh bill of exceptions.* The plaintiffs having offered in evidence, that on the 10th of October 1795, being Saturday, the plaintiffs called upon the defendant, and demanded of him whether he would retain the Brandy, so delivered into his warehouse, on the terms of the contract, and the award, to which the defendant replied that he would not, that he had never considered the Brandy as his, and that the plaintiffs might take it away whenever they pleased. That the plaintiffs then told the defendant, that they would take away the Brandy the next Monday, and if on a resale any loss should arise they, the plaintiffs, should consider the defendant responsible, and act accordingly. To which the defendant made no reply. The plaintiffs then proved, that on Monday the 12th of October 1795, they drew an order in writing for the Brandy, on the defendant. That in consequence of that order the Brandy was delivered by the defendant to Messrs *Yates* and *Campbell*, the persons in the order named. The defendant having offered to subjoin the above statement of the evidence admitted to have been given, to the statement of facts made by the plaintiffs, as the foundation of their prayer for the opinion of the court given on the preceding bill of exceptions,

THE COURT, [*Sprigg*, J.] refused to have the same added, on this ground, that the same had no relation to the subject matter by the prayer submitted for the consideration of the court. The defendant excepted.

10. *The eighth bill of exceptions.* Upon the statement in the *sixth bill of exceptions*, and the court having previously directed the jury, that by the award the defendant was bound to take 90 pipes, or 10,000 gallons, of the Brandy, the plaintiffs then prayed the opinion of the court, and their direction to the jury, whether, supposing no part of the contract was submitted to arbitrators, except whether the defendant should take any and what quantity of the Brandy, the defendant was in consequence of the award

entitled to take the same, without complying with the terms of the contract.

SPRIGG, J. (*Done, J. not present.*) The Court are of opinion, that under the award the defendant was at liberty to keep the Brandy without complying with all the terms of the original agreement herein recited. The plaintiffs excepted.

11. *The ninth bill of exceptions.* The defendant, by his counsel, proposed to add the statement in the *seventh bill of exceptions*, to the last above statement; but the court refused to permit it to be added, upon the same ground it was refused to the statement in the *sixth* bill of exceptions. The defendant excepted.

12. *The tenth bill of exceptions.* The plaintiffs then gave in evidence, by Colonel *John Stricker,* one of the arbitrators, that previous to the award they the arbitrators never received any papers relative to the matter in dispute, from either of the parties, but in the presence of the opposite party; that the arbitrators, previous to the giving the award, had but one interview with the parties, when each made a verbal statement of their case, and the plaintiffs left with the arbitrators the letter from the defendant to them, dated the 27th July 1795, herein before stated. That he the witness, did not know whether the defendant saw that paper when it was delivered to the arbitrators by the plaintiffs, or not, and that he does not recollect whether the defendant did or did not agree to submit to the arbitrators whether he the defendant should give to the plaintiffs, an endorser for the price of the Brandy, in case he should be adjudged by the arbitrators to take the same, or any part thereof. That the letter from the defendant to the plaintiffs, above stated, on the 27th July 1795, was the paper upon which the arbitrators acted; and that having determined that the defendant should keep 90 pipes, or 10,000 gallons, of the Brandy, the arbitrators determined that he ought to give an endorser, it being so provided by the contract. The plaintiffs then prayed the opinion of the court to the jury, that if they believed such evidence, that then such evidence is sufficient, in point of law, to support the first count in the plaintiffs' declaration.

SPRIGG, J. (*Done, J. not present.*) The court having already determined, "that the terms and stipulations be-

tween the parties, on which their matters in dispute were to be submitted to reference, *and* matters of fact to be determined by the jury," and the validity of the award thus depending on the opinion of the jury, they cannot give the direction as prayed. The plaintiffs excepted.

13. *The eleventh bill of exceptions.* The defendant then prayed the opinion of the court to the jury, that the award produced and given in evidence to them is not admissible evidence to them upon the second count in the plaintiffs' declaration; and that upon that count it ought to be disregarded by them.

Done, J. The court are of opinion, that the award, either separate from or connected with the original contract in this case, is not legal or competent evidence to be admitted in support of the second count in the plaintiffs' declaration. The plaintiffs excepted; and the verdict and judgment being for the plaintiffs, the defendant appealed to this court. The cause was argued on the *fifth* bill of exceptions, at December term 1806, before Chase, Ch. J. and Buchanan, and Gantt, J. by *W. Dorsey* and *Harper*, for the Appellant; and *S. Chase*, jr. for the Appellees, and was reargued at December term 1807, before Chase, Ch. J. and Tilghman, Buchanan, Nicholson, and Gantt, J.

*W. Dorsey* and *Harper*, for the Appellant, stated, that the question to be argued on the *fifth* bill of exceptions, was, Whether the memorandum or original list of the sales of the Brandy ought not to have been admitted in evidence? They contended that it ought not, as it did not fall within the exception to the general rule of law, that the best evidence, of which the nature of the case was susceptible, must be given. That *Yates* or *Campbell*, both of whom were alive, ought to have been produced to prove the sale. They cited *Peake's Evid.* 10. *Price vs. The Earl of Torrington*, 1 *Salk.* 285. *Bull. N. P.* 282, 283. *Cooke vs. Marsden*, 1 *Esp. Rep.* 1. *Warren vs. Greenville*, 2 *Stra.* 1129. *Smartle vs. Williams*, 1 *Salk.* 245 & 280. *Williams vs. The East India Company*, 3 *East*, 192; and *Davis vs. Batty*, 1 *Harr. & Johns.* 264.

*Martin, Purviance,* and *S. Chase;* jun. for the Appellees, cited *Digby vs. Stedman,* 1 *Esp. Rep.* 329. *Pitman vs*

HARVARD LAW SCHOOL LIBRARY

*Maddox,* 2 *Salk.* 690. 1 *Lofft's Gilb.* ch. 1, p. 5; and *Biggs vs. Lawrence,* 3 *T. R.* 454.

THE COURT dissented from the opinion given by the General Court in the *fifth* bill of exceptions; and as no objections were urged against the opinions given in the other bills of exceptions, taken by the defendant in that court, they concurred therein.

CHASE, Ch. J. dissented, and delivered the following opinion: The question to be decided by the court, on the fifth exception, is, Whether the list or memorandum offered in evidence to prove the sale of the Brandy, and the price, was legal and competent evidence for that purpose? The material fact to be proved was the price for which the Brandy was sold, because on that depended the quantum of damages to be given by the jury.

The exception states, that —— *Patrick* acted as clerk to *Yates* and *Campbell,* the auctioneers, who sold the Brandy; was present at the sale, and made the entries on the said list or memorandum by their order, from which the said entries were transferred to the books of *Yates* and *Campbell,* and that the said *Patrick* was dead.

Lord *Gilbert,* in his treatise on evidence, in page 16, explaining the rule of evidence he had before laid down, as the first and most signal, declares the true meaning of it to be, that no such evidence shall be given, which *ex natura rei,* or according to the nature of the transaction, supposes still a greater evidence behind in the parties possession or power.

The said rule, as explained and illustrated by *Gilbert,* is certainly the true rule, coincides with common sense, and is best adapted to the ascertainment of the truth of facts, and consequently most conducive to the promotion of justice.

The application of the rule depends on the nature of the case, and what is the best evidence in the power of the party to prove it.

The entries made by the clerk appointed for the purpose by the auctioneers, was the best evidence to prove the sale of the Brandy, to whom made, and the price, which the nature of the transaction, as disclosed by the exception, was susceptible of.

No person could prove the said entries but the clerk, if living, that being the best evidence of it. The clerk being dead, the inferior or secondary evidence may be resorted to—the proof of his hand writing, which is proof of the entries made on it. Such was the decision of Lord *Kenyon*, in the case of *Cooper vs. Marsden,* 1 *Esp. Rep.* 1, 2, where he said, "that the rule of evidence was clear, that entries in the books of bankers, or persons keeping books respecting their trade or business, could only be proved by the clerks who made the entries."

According to the nature of the transaction, the clerk is the only person who could be supposed to have an accurate knowledge of the sale, the price, and the person to whom sold, and his testimony is the best evidence; and according to the nature of the case, no presumption arises that there is a greater evidence in the power or possession of the party to exclude the proof of the hand-writing of the clerk.

It is possible *Yates* or *Campbell,* or some of the persons present at the sale, might have had a knowledge of it, and the price; and if they had, they might have been examined to corroborate the evidence of the clerk, or to contradict it; and if examined by the adverse party, to contradict it, the question would be for the jury to determine on the respective credit of the witnesses, and could in no wise affect the competency of the testimony offered.

The memorandum or list of the clerk, appointed for the purpose, on which he made entries at the time of the sale from the mouth of the auctioneers, and according to directions publicly announced in the auction room, must be better evidence than the frail and fallible recollection of the auctioneer, who cannot be supposed, in the midst of a multiplicity of transactions in the course of a day, after a short lapse of time, to remember the sale of a particular lot of goods, the time when sold, the price, and the person to whom sold—all the above circumstances will appear on the memorandum or list of the clerk.

The law in requiring the best evidence, does not require *all* the evidence which might be given; for instance, if there are two witnesses to a deed, or a dozen present at the making of a verbal contract, the evidence of any one, while uncontradicted, is sufficient. *Peake's Evid.* 7.

1813.

Walsh
vs
Gilmor

The case of *Price vs. Lord Torrington*, 1 *Salk.* 285, is more liable to objection than the present case. The clerk, who made the entry, had no knowledge of the delivery of the beer, but from the report of the drayman; but the clerk, who made the entry in this case, was appointed for the purpose, was present at the sale, and made the entry by the direction of the auctioneer, on his proclaiming the highest bidder, and the price, and having himself a knowledge of the sale.

According to the nature of the transaction in both cases, no person but the drayman could be supposed to be privy to the delivery of the beer, and no person could be supposed to have a knowledge of the sale and price but the clerk.

The case under consideration is similar, or nearly so, to the case of *Pitman vs. Maddox*, 2 *Salk.* 690, in which, on proving the hand-writing of the tailor's servant, who was accustomed to make entries in the shop book, he being dead, the shop book was allowed to be evidence, as no other person could be supposed to be conusant of the delivery of the clothes. The chief justice likened it to the case of proving the hand-writing of a witness to an obligation.

The case of *Smartle vs. Williams*, must have been decided on the ground, that the scrivener acted as clerk or agent of the mortgagee, and had power to receive the money, and on that supposition, the resemblance in the leading circumstances to the present case is very obvious, and without the aid of such supposition the decision cannot be law.

The judgment in *Williams vs. The East India Company*, 3 *East*, 192, is certainly good law, but the case is not analogous to the present.

In that case it was decided to be incumbent on the plaintiff to prove the want of notice or information of the inflammable quality of *Roghan*. There were only two persons who were privy to the transaction; the military conductor who delivered the *Roghan*, and the chief mate who received it and stowed it away; either of whom could have proved whether notice was given or not. The chief mate was dead, but the military conductor was living, and the *prima facie*, or secondary evidence, was rejected, because it appeared, by the transaction disclosed in proof, that the plaintiff had greater evidence in his power.

In the case of *Warren vs. Greenville*, 2 *Strange*, 1129, although in the opinion of the court the evidence offered to fortify the presumption arising from length of time was not necessary, yet they declared it to be legal and admissible. The entries in the attorney's debt book, who drew the common recovery and surrender, were read and admitted as evidence, on the ground he was employed to draw them, and being dead, the proof of his hand-writing was the best evidence, because, if living, he could have proved those circumstances.

In this case the entries, when proved, are evidence, because made by authority, and by the person appointed clerk for that purpose. The cases generally in which a memorandum in writing is resorted to for the purpose of refreshing the memory, are those where it is made by the witness of his own accord, without authority, and merely to perpetuate the remembrance of the transaction, that he may relate it accurately in case he should be called on, and not done by him as an agent in the usual course of business. In such cases the memorandum is not evidence.

I am of opinion the judgment of the General Court be affirmed.

NICHOLSON, J. concurred with the Chief Justice.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

At the new trial in the County Court in March 1809, the plaintiffs, (now appellees,) gave in evidence the letter from the plaintiffs to the defendant of the 27th of July 1795, and the one from the defendant to the plaintiffs of the same day, and that the ship *Ann* in the contract mentioned, did arrive at the port of *Baltimore* within six weeks from the date of the said contract, with a cargo of 111 pipes of Brandy on board, the property of the plaintiffs, part of which, to wit, nine pipes, were imported for the plaintiffs' own use; that there were also on board of the said ship 38 pipes of Brandy belonging to other persons than the plaintiffs; that the said 102 pipes of Brandy, immediately on their being landed from on board the ship, were sent by the plaintiffs to the defendant's warehouse, where it was received by a clerk of the defendant, the defendant being then in *Philadelphia;* that the defendant, on his return to *Baltimore*, after an examination of the Brandy, refused to comply with his contract, and in consequence thereof a

dispute arose between the plaintiffs and defendant respect-
ing the Brandy; whereupon they agreed to submit the set-
tlement of said dispute to *John Stricker* and *John Holmes*.
And gave in evidence the following letters containing the
submission, viz. one from the defendant to the plaintiffs,
dated the 17th of August 1795; another from the plaintiffs
to the defendant of the same day; another from the defen-
dant to the plaintiffs of the 18th of August 1795; another
from the plaintiffs to the defendant of the same day; ano-
ther from the defendant to the plaintiffs of the 19th of Au-
gust 1795; another from the plaintiffs to the defendant of
the same day; and another from the defendant to the plain-
tiffs of the same day. And that the said arbitrators took
upon themselves the burthen of arbitrating between the
parties, and after full hearing of each party, did make an
award on the 22d of August 1795, and which was given in
evidence. The plaintiffs further gave in evidence, that af-
ter the award was made and delivered to the defendant,
the plain tiffs applied to the defendant, on Saturday the
10th of October in the year aforesaid, to know whether he
would retain the Brandy on the terms of the contract and
award made by the arbitrators; that the defendant replied
that he would not; that he had never considered the Bran-
dy as his, and that the plaintiffs might have it whenever
they chose; that thereupon the plaintiffs informed the de-
fendant, that unless he took the Brandy according to the
contract and award, that they would, on the Monday fol-
lowing, take it away and send it to be sold at auction on
the account of the defendant, and would consider him as
responsible for the difference between the price for which
it would sell, and the sum which by the contract and award
the defendant was to give for it. And that the plaintiffs
did send to the defendant an order, in writing, for the de-
livery of the Brandy, dated the 12th of October 1795. And
did, on the same day accordingly, on the Monday follow-
ing, take the Brandy away from the warehouse of the de-
fendant, and sent the same to Messrs. *Yates* and *Campbell*,
then being auctioneers in the city of *Baltimore*, by whom
it was sold at auction on a credit of 4 and 6 months, for a
less sum than that for which the defendant agreed to give
for it. The defendant then prayed the opinion of the court,
and their direction to the jury, that the act of the plaintiffs
in taking away and selling the Brandy, did in law absolve

the defendant from any responsibility to the plaintiffs, under or by reason of the said award and contract. But the Court, [*Nicholson,* Ch. J.] refused to give the direction. The defendant excepted.

2. The defendant then gave in evidence, that there were imported by the plaintiffs in the ship *Ann,* at the time aforesaid, over and above the quantity of Brandy meant to be sold, the quantity of nine pipes of Brandy for their own use, being the Brandy meant and alluded to in that part of the letter of July 27, 1795, from the plaintiffs to the defendant, which is in the following words, viz. "Exclusive of some old Cogniac we have on board, which is not meant to be sold." The defendant then prayed the opinion of the court to the jury, that on the evidence so given by the plaintiffs and the defendant, the plaintiffs were not in law entitled to recover on the *second* count in their declaration. This direction the court refused to give. The defendant excepted.

3. The defendant further prayed the opinion of the court to the jury, that the letters between the plaintiffs and the defendant, produced by the plaintiffs as containing the submission of the parties to an arbitration, which letters are six in number, and bear date on the 17th, 18th, and 19th of August 1795, respectively, did not authorise the arbitrators to make and return the award aforesaid, in that part of it which relates to the defendant's giving an endorser to the plaintiffs. But the court refused to give the direction. The defendant excepted.

4. The plaintiffs then gave in evidence, that all the letters herein before referred to, were laid before the arbitrators before they made the award given in evidence. The defendant then further prayed the opinion of the court to the jury, that the plaintiffs are not entitled to recover on the *first* count in the declaration. This direction the court also refused to give. The defendant excepted; and the verdict being for the plaintiffs, he appealed to this court.

The cause was argued at this term before BUCHANAN, EARLE, and JOHNSON, J.

*Key, W. Dorsey* and *Harper,* for the Appellant, contended, 1. That neither of the counts in the declaration was suffi-

1813.

Walsh
vs
Gilmor

cient to support the plaintiffs' action, as no valid judgment could be entered thereon.

2. That the award was not a good one in point of law, and it was not helped by the averments in the declaration.

3. That the plaintiffs taking the brandy out of the possession of the defendant, as stated in the *first* bill of exceptions, absolved the defendant from all liability on account of it.

4. That the refusal of the court below, as expressed in the *second* bill of exceptions, to direct the jury that the plaintiffs could not recover on the *second* count in the declaration, was erroneous.

5. That the submission did not authorise the arbitrators to award that the defendant should give an endorser; and that the court below ought to have directed the jury agreeably to the defendant's prayer as stated in the *third* bill of exceptions.

6. That the court below ought to have directed the jury agreeably to the defendant's prayer in the *fourth* bill of exceptions, that the plaintiffs were not entitled to recover on the *first* count in the declaration.

On the *first* and *second* points they argued, that the award was not a good one in point of law; that every award must be certain, and to ascertain that which was before uncertain, it might be made good by reference to something that was certain. Here the *first* count in the declaration stated that the award was that the defendant should take 90 pipes, &c. of Brandy, and that he ought to give an endorser *as per agreement*, &c. and there is no averment what the agreement was to which the award referred. They cited *Kyd on Awards*, 138, 132, That in the *second* count there is no averment of what quantity of Brandy was contained in the 90 pipes, which was material to be ascertained, as the defendant was to pay a particular price per gallon, so that the extent of the defendant's liability was not stated.

On the *third point* they contended, that it was a clear rule of law with respect to contracts, that where one of the parties disabled the other from performing, he could not recover. The contract here was put an end to by the plaintiffs, who might have recovered if the Brandy had not been taken out of the defendant's possession. That act of theirs rescinded the contract. It was not a case where a

resale was authorised so as to bind the defendant for any deficiency.

On the *fourth point* they contended, that the proof offered in evidence did not support the *second* count in the declaration; and that the principle of law was, that the plaintiffs must prove the contract as laid. They referred to 1 *Esp. Dig.* tit. *Assumpsit*, (139) 262. This count states, that the defendant was to have whatever Brandy the plaintiffs might have on board the vessel; and the proof is that he was not to have the whole.

On the *sixth point* they argued, that the plaintiff could not connect the agreement stated in the *first* count with that stated in the *second*; but if it is connected as matter of substance and not inducement, then the contract stated, being contrary to the proof, cannot aid it. The contract being stated must be proved as laid. They cited *Bristow vs. Wright*, Doug. 665; and 1 *Chitty's Plead.* 304.

*Martin, Pinkney* (Attorney General of *U. S.*,) and *Purviance*, for the Appellees, on the *first point* contended, that if there was any defect in the declaration it was cured after verdict. They referred to 1 *Com. Dig.* 137, 5 *Com. Dig.* 342, 354. *Rushton vs. Aspinal, Dougl.* 683. 1 *Chitty's Plead.* 298, 306; and *Peppin vs. Solomons, 5 T. R.* 496.

On the *third point* they referred to 1 *Esp. Dig.* (18) 50, *Sands vs. Taylor, 5 Johns. Rep.* 395.

BUCHANAN, J. delivered the opinion of the court. This case is brought up on *four* bills of exceptions. The question on the first of which is, Whether the contract between the parties was rescinded by the act of the plaintiffs in removing the Brandy, which formed the subject of the agreement, from the warehouse of the defendant, and exposing it to sale at public auction? In deciding this question we feel no difficulty. The Brandy was taken from the defendant's warehouse with his knowledge and acquiescence, not with a view to rescind the contract, but because he had refused to keep it, and the sale at auction was resorted to as a criterion by which to ascertain the quantum of injury the plaintiffs had sustained by the defendant's violation of his engagement. By the refusal of the defendant to receive it, the Brandy remained the property of the

1813.

Walsh
vs
Gilmor

plaintiffs, who had a right to dispose of it as they pleased—— the removal and sale, therefore, did not operate in law to rescind the contract. The defendant had notice of the course they meant to pursue, and with a full knowledge of their object and intention in taking it away, consented to the removal of it. If an action had been brought to reco- ver the price of the Brandy delivered, the removal and sale by the plaintiffs would have been a good defence, for the value could not be demanded when the party was depriv- ed of the article itself. But this suit is not for the price of the Brandy; it is founded on the refusal of the defendant to receive it according to the terms of his agreement, and the object is to recover damages for that violation of his con- tract, from a liability to which the defendant was not ab- solved by the act of the plaintiff in taking away and selling the Brandy. We therefore concur in opinion with the court below on the *first* bill of exceptions—But differ from that court in the opinion to which the *second* bill of exceptions is taken.

In actions founded on contracts, the contract must be set out, either in the words in which it is made, or according to the legal effect; and contracts being in their nature entire, if the contract proved, and that declared upon, be different in any part, the variance is fatal. The *second* count in the declaration is on a special agreement. The letter from the plaintiffs of the 27th July 1795, and the answer from the defendant of the same date, taken together, form the con- tract between the parties; and it clearly appears from those letters to have been their intention to except from their a- greement the Cogniac which was on board the ship *Ann.* In the contract set out in the declaration there is no such exception, but the agreement is stated to have been for "whatever Brandy the plaintiff might have on board the *Ann.*" There is an evident variance, therefore, between the contract declared upon, and that given in evidence at the trial, which we think fatal, and are of opinion that the plaintiffs were not entitled to recover on the *second* count in the declaration.

The question on the *third* bill of exceptions is too plain to admit a doubt. Upon the slightest examination of the correspondence between the parties, relative to a reference of the subject of dispute, it will appear that the whole matter in controversy was submitted to the arbitrators, and that

1813.

Walsh
v s
Gimher

the award is within the submission. The *third* bill of exceptions therefore fails.

The *fourth* bill of exceptions presents the same question that is involved in the second, and the same variance appears between the allegation and the proof. But it is said that the agreement set out in the *first* count in the declaration, being only stated as inducement, the same exact certainty is not required as if the action had been founded on the contract itself. But whatever is alleged as inducement, and is not impertinent and foreign to the cause, must be proved as alleged; and when a contract is alleged and described, a variance is equally fatal, whether the action be upon the contract itself, or upon some collateral matter. In this case, therefore, even if it was unnecessary to have set out the agreement between the parties, yet being set out, and not being impertinent, but connected with the cause, it ought to have been proved as stated, and not being so proved, the plaintiffs were not entitled to recover on the *first* count in the declaration. We therefore dissent from the opinion of the court below on the *fourth* bill of exceptions.

The objection to the uncertainty of the award in that part in which the defendant is directed to give an endorser, "as per agreement submitted to the arbitrators and acknowledged by the parties," is well taken, and though it may be susceptible of being made certain and good by reference to the agreement to which it relates, yet there is no sufficient averment in the declaration by which the defect is cured, and therefore both the declaration and the award are bad in that particular. The answer, that the defect is cured after verdict, does not remove the objection. The omission of an averment is sometimes aided after verdict, on the ground that every thing may be presumed to have been proved which was necessary to sustain the action; and if it should be admitted that the want of an averment in this case would have been aided, after verdict, if the cause had been brought up by writ of error on the pleadings alone, yet the bills of exceptions taken at the trial, which contain all the evidence offered to the jury, and upon which the court was required to direct them that the plaintiffs were not entitled to recover, strips the verdict of all its healing power, and presents the question wholly uninfluenced by it; for nothing can be presumed to

1813.

Dorsey
vs
Dorsey

have been proved which does not appear in the bills of ex-
ceptions; and the plaintiffs, not being entitled to recover
on the evidence so stated, the legal intendment fails by
which alone a verdict can be called in aid of a title defec-
tively set out.

Other points were started by counsel in argument which
it has not been thought necessary to examine. The court
is of opinion that the judgment of the court below ought to
be reversed.

Johnson, J. dissented.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.