Kolb *vs.* Whitely, Trustee of Trowbridge and Taylor.—1831.

JOSEPH KOLB *vs.* ANTHONY WHITELY, Trustee of D. TROWBRIDGE and J. TAYLOR.—*December,* 1831.

Where A and B, who were partners in trade, became embarrassed about the 17th March, and on the 27th applied for a discharge under the insolvent laws, and where, as between the permanent trustee of the insolvents and the defendants, the inquiry was, whether a certain transfer of property made by the insolvents, on the 19th, to the defendant, then a creditor, was made with a view, or under an expectation of being or becoming insolvent debtors, *it was held,* that for the purpose of enabling the jury to find when the intent to seek relief under the insolvent laws originated, declarations of one of the insolvent partners, made a few days before the 20th, that if certain creditors came on them, they must stop payment, or petition—that bills of sale of household furniture executed by them on the 21st, and declarations of one of the insolvents, made at the same time, that the grantee therein (who was not the defendant,) had advanced money to the partners, and they wished to secure him in consequence of the situation they were placed in,—and that entries in the day book of the insolvents, dated the 19th, 20th, 21st and 23d, shewing a delivery of goods and notes to various persons, and among others, to the defendant, were all

competent evidence for that object, as surrounding circumstances of the transaction, and a part of the *res gestæ*.

When declarations of persons, not parties, to a suit, constitute a part of the transaction under investigation, they are admitted in evidence to show its character, or the speaker's intention.

In an action by the permanent trustee of an insolvent debtor, under the system for the City and County of Baltimore, it is not necessary to produce an assignment from the provisional trustee to him, of the insolvent's effects, nor to show that a majority of the insolvent's creditors recommended him to the commissioners of insolvent debtors as permanent trustee, to support his right to sue in that character.

PER HARFORD COUNTY COURT.

APPEAL from *Harford* County Court.

This was an action of *Trover* for a quantity of leather, which originated in *Baltimore* County Court, on the 21st of April, 1829, and was afterwards removed to *Harford* County Court, upon a suggestion, according to the act of assembly.

The appellee in this court, was the plaintiff in the court below—issue was joined upon the plea of not guilty.

1. At the trial the plaintiff offered to read in evidence to the jury, the records of the proceedings of *Baltimore* County Court, except certain interrogatories contained therein, upon the applications of *Trowbridge* and *Taylor*, dated March 27th, 1829, for the benefit of the insolvent laws, by which it appeared that said *Trowbridge* and *Taylor* were discharged by the said court, upon the report of the commissioners of insolvent debtors for the city and county of *Baltimore*, and that the appellee was appointed their permanent trustee, and gave bond with approved security, as such, on the 4th of April, 1829; for the purpose of proving that the said appellee was the duly appointed permanent trustee of said insolvents, and entitled in that capacity, to sue for their effects and rights. To the competency of which evidence for that puprose, the defendant objected, unless the plaintiff first produced an assignment to him from the provisional trustee, mentioned in said proceedings; and unless the said plaintiff also proved, that he was appointed upon the recommendation of a majority in amount of the creditors of the insolvents. But the court [KELL, A. J.] over-

ruled the objections, and permitted the proceedings for the purpose aforesaid, to be read to the jury—the defendant excepted. This exception was abandoned in the argument.

2. The plaintiff then proved that the insolvents were curriers and partners on *Cheapside*, in the city of *Baltimore*, before and during the month of March, 1829. That *Kolb*, the defendant, occupied a warehouse next door to them, and was also a currier, and that the witness a day or two before the 20th of March, 1829, was in the currying shop of *Trowbridge* and *Taylor*, and they had therein a stock of leather, which the witness, (who was also a currier) from the appearance of the stock on the shelves, supposed to be worth $1200 or $1500, and that he was not in the cellar of their store. That on the morning of the 20th of March, the attention of the witness was attracted by the circumstance, that at the back door of *Trowbridge* and *Taylor's* store, a dray was loading with leather, which was taken out of the cellar of the store, and was of various kinds. The dray was laden in a hurried and unusual manner, calculated to injure the leather, the quantity of which upon the dray, was worth from $200 to $300, and was taken off, the witness knew not where. That it did not stop at the store occupied by *Kolb*. That in the course of the same morning, witness was called upon to appraise the value of the leather in *Trowbridge* and *Taylor's* shop. That the rent claimed from them was about $75, and after including the tools, &c. there was little more leather in the warehouse than was sufficient to pay the landlord's claim. That whilst the appraisement was going on, the defendant came to the warehouse, and wanted the appraisers to value the articles higher than they were appraising them at; and that when the appraisers were proceeding to the upper story to find other property, that on the lower floor not being sufficient, defendant interfered, and claimed to be the owner of the leather up stairs. The appraisers, however, went up stairs, and after they had there discharged their duty, they were called down, when defendant paid the landlord, and took the

leather at the appraisement, and the key of the warehouse, observing that if *T.* and *T.* would refund him the sum he had advanced for the leather, they might have it. That on the same day, *Kolb*, the defendant, came to the store of witness, when upon being asked if he was a creditor of *T.* and *T.*, he replied that he was not then a creditor—that he had been satisfied in leather, &c. and had given them up their notes, which amounted to from $500 to $600. He did not say when he had received the leather. The witness was told by said *Kolb*, at a subsequent time, that he had received a letter from *Whitely*, the plaintiff, as trustee of *T.* and *T.*, requesting him to come up and settle his claim against him. *T.* and *T.* were in good credit until one *Myers* absconded from *Baltimore*, which was, the witness thought, from eight to ten days before the 20th of March, and then it was generally known that *T.* and *T.* were affected by *Myers'* affairs. The plaintiff proved by another witness, that defendant called on him (the witness) within a day or two after the 20th March, and stated, that the insolvents had been indebted to him, but that they had satisfied or paid him, and he invited the witness in his shop to look at some calf skins, which had the appearance of having then been recently moved, not being dry. The plaintiff further proved, that about the time he was appointed trustee, the defendant, in a conversation with another witness, about the affairs of the insolvents, expressed his determination to hold on to the leather he had got from them; which conversation being communicated to plaintiff, he wrote and sent the following letter to defendant: *"Mr. Joseph Kolb,— Sir*—From the books of *Trowbridge* and *Taylor*, I learn that a considerable amount of stock was handed over to you by said *T.* and *T.* immediately previous to, or about the time of their application for the benefit of the insolvent laws. It becomes my duty as trustee for the creditors, to seek to recover said stock, as the property belonging to the estate of insolvents. I therefore respectfully notify you to deliver over the said stock and property to me, in order that the

same may be fairly distributed amongst the creditors of said insolvents. Yours respectfully, *A. Whitely*, trustee. April 10, 1829." Which the defendant, upon its being handed to him, opened and looked at, and then threw it into the street, telling the bearer of it, that if the writer was there, he would serve him in the same manner. The plaintiff further proved, that *Myers* absconded on the 17th of March, 1829, and came back to *Baltimore*, and was arrested and sent to prison on the night of the 23d of March, and that *T*. and *T*. were jointly responsible with him on various notes to a large amount, in the possession of the *Mechanics' Bank* and others, and that a note on which they were endorsers, was protested on the 19th of March, 1829, and notice given to them on that day. The defendant proved that the insolvents paid a note which became due on the 15th March, 1829, and that *Myers'* estate divided twenty-five cents in the dollar, and will divide five cents more, and that the plaintiff, as their trustee, had not demanded or received any dividend on the estate of *Myers*. The plaintiff then proposed to prove, that some few days before the 20th March, 1829, *Daniel Trowbridge*, of the house of *T*. and *T*. informed the witness, that if *Myers'* creditors came on them, they must stop payment or petition, though they had enough to pay their own debts, and that they were endorsers on *Myers'* paper to a large amount. The defendant objected to the admissibility of this evidence, for the following reasons. 1. That no declarations of the insolvents, after the alleged delivery of leather by them, are admissible for the plaintiff. 2. That no declarations before the time of delivery of the leather, are admissible for plaintiff. 3. Because the said declarations do not appear to have been made at the time of the said delivery of leather, nor with reference thereto. But the court admitted the said declarations, and instructed the jury, that if the said declarations were made by *Trowbridge* anterior to the time of delivery to *Kolb*, (if there was such a delivery,) that then they might consider the same in forming their opinion, whether the said *T*. and

*T.* at the period of said delivery, delivered the same with a view, or under an expectation of becoming insolvent debtors. The defendant excepted.

3. The plaintiff then proved that the defendant, since the commencement of this suit, said, that he had got leather for his claim against *Trowbridge* and *Taylor*—that he had tried to save himself, in doing which, he had done no more than other people would do in similar circumstances: and also read in evidence two bills of sale, executed by the respective insolvents, on the 21st of March, 1829, to *Reuben Trowbridge,* conveying to him a variety of household furniture : and offered to prove, that *John Taylor,* one of the insolvents, on the date of the execution of the bills of sale, informed the conveyancer, that *Reuben Trowbridge* had advanced money to them, and that they wished to secure him, in consequence of the situation they were placed in by *Myers,* and that they would have to petition. To the competency of the bills of sale, and the information derived from said *Taylor,* the defendant objected. But the court overruled the objection, and permitted the evidence to go to the jury, for the purpose of showing that the insolvents were dispossessing themselves of their property, and for the purpose of enabling the jury to ascertain when *T.* and *T.* first had in view, or were under an expectation, of being or becoming insolvent debtors. The defendant excepted.

4. The plaintiffs then, for the sole purpose of showing that the insolvents, on the 19th, 20th, 21st, and 23d of March, 1829, were dispossessing themselves of their property generally, with a view, or under an expectation, of being or becoming insolvent debtors, and to enable the jury to fix the time at which such view or expectation originated, offered to read in evidence certain entries in the day book of the insolvents, which it was admitted were genuine, by which it appeared that at those dates, they transferred to the defendant and others, a large amount of goods, and received payment chiefly in

their own paper. To this evidence the defendant objected upon the ground, that the said entries were inadmissible; and also, that they ought not to be read, unless the names of the parties attached to them, and particularly that of *Joseph Kolb*, should be omitted : but the court permitted the entries to be read for the purpose aforesaid. The defendant excepted, and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, and DORSEY, J.

*Krebs*, for the appellant, contended, 1. That the declarations of the insolvents, offered in evidence by the plaintiff, were inadmissible ; *first*, because they were interested in the success of plaintiff, as a recovery by him would swell the fund for distribution among their creditors : or, *second*, they are to be regarded as strangers, and their declarations consequently, merely hearsay. For the exceptions to the rule, forbidding the admission of hearsay, as evidence, he cited 1 *Philips' Ev.* 186, &c. He argued that the insolvents and the appellant, stood to each other in the relation of vendor and vendee. The insolvents are the vendors, and their declarations, made prior to the sale, might be evidence against the vendee, because then they spoke against their interest. *Dorsey vs. Dorsey*, 3 *Harr. and Johns.* 410. It is not so, however, in reference to declarations made after the sale. 1 *Serg. and Rawle*, 526. The declarations of a bankrupt, as to past transactions, which have have been consummated, are not admissible. 1 *Saund. Pl. and Ev.* 303. 1 *Phillips' Ev.* 219. 4 *Esp. Rep.* 233. 1 *Ib.* 255. 12 *Serg. and Rawle*, 328. 14 *Massa. Rep.* 245. 12 *Ib.* 5 *Johns. Rep.* 413. He contended also, that the bills of sale, and the entries in the books of the insolvents, were altogether inadmissible. For the purpose of showing that the insolvents were interested in promoting the plaintiff's success, he referred to the *act of* 1805, *ch.* 110, *sec.* 10, by

which, a creditor who takes from an insolvent debtor a collusive transfer, forfeits his debt.

*Johnson* and *Gill*, for the appellee. The single question is, upon the admissibility of the evidence. That the transfer was made with a view to insolvency, is not made a question. The defendant does not claim title to the property as a purchaser, but as a preferred creditor; and the County Court merely decided, that declarations made by the insolvents, showing that at the time of the transfer, they contemplated becoming insolvent, and designed to give an undue, and improper preference, to the defendant, were evidence. The declarations so made, are certainly evidence to show indebtedness at the time, as would judgments against, or promissory notes given by, the insolvents. If not, then their petition, and record of discharge, would not be evidence for the same purpose. They contended that the rules of evidence, adopted in reference to the bankrupt system of England, were not applicable to our system of insolvency, which contemplates that the acts of the insolvent, previously to his petition, will manifest his design to do so. His acts and declarations, are part of the *res gestæ.* 1 *Stark. Ev.* 46, 7 *sec.* 28. *Ib.* 48, *sec.* 29. To show that the intention of the insolvent might be inferred from his acts and declarations, they cited 5 *Harr. and Johns.* 97.

Stephen, J., delivered the opinion of the court.

This is an action of *Trover*, instituted by the appellee, as trustee of *Trowbridge* and *Taylor*, to recover from the appellant certain property, transferred by *Trowbridge* and *Taylor* to the appellant, who was their creditor at the time they became insolvent. In the course of the trial of the cause, the plaintiff offered in evidence certain declarations of one of the insolvents, a short time prior to the transfer, relative to the pecuniary embarrasments of the firm, and also certain entries in their day-book, for the purpose of showing that they were dispossessing themselves of their property,

generally, with a view or under an expectation of becoming insolvent debtors, and to enable the jury to ascertain the time, when such view or expectation originated ; a part of which entries went to show that they were disposing of large quantities of leather, part of their stock in trade, and of which article they were manufacturers.   To the admissibility of these declarations and entries, the defendant, by his counsel objected, but the court overruled the objection and suffered the testimony to be given to the jury ; the defendant excepted, and whether or not such testimony was legally admissible, for the purpose for which it was offered, is the question, which this court is now called upon to determine. The insolvents applied for the benefit of the insolvent laws on the 27th of March, 1829 ; on the 20th of March of the same year, the transfer of the leather was made to the defendant, for which this action was brought.   (Here the Judge adverted to the bills of exceptions, and then said.)   By an act of the General Assembly, passed in 1816, *ch.* 221, *sec.* 6, it is enacted, " that all deeds, conveyances, transfers, assignments, or sales of any property, real, personal or mixed, or of any debts, rights or claims, to any creditor or creditors, security or securities, which have been, or shall hereafter be made by any person, with a view or under an expectation of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference to such creditor or creditors, security or securities, shall be absolutely null and void."   And it further provides, that such property shall vest in the trustee of the insolvent debtor, as effectually as any property specified in his schedule.   To enforce the provisions of this section, and to recover the property transferred, was the object of this suit.   It became necessary, therefore, to prove to the jury, that at the time of the transfer and delivery of the property to *Kolb*, the insolvents contemplated becoming insolvent debtors ; and to establish that fact, the entries and declarations were offered in evidence.   The rule is well settled, that where the expressions heard, constitute a part of the transaction,

they are admitted to show its character, or the speaker's intention ; as the declarations of a trader on leaving home, to show an act of bankruptcy, 2d *Saun. P. and E.* 66. Hearsay is often admitted in evidence, as part of the *res gestæ ;* the meaning of which seems to be, that where it is necessary, in the course of a cause, to inquire into the nature of a particular act, and the intention of the person who did the act, proof of what the person said at the time of doing it, is admissible evidence for the purpose of shewing its true character. Thus, for example, in an action by the assignees of a bankrupt, the bankrupt's declarations, at the time of his absenting himself from home, are properly received in evidence, to show the motives of his absence. In the case of *Bateman vs. Bailey,* therefore, where the question was, whether the trader's departure from his dwelling house, amounted to an act of bankruptcy, the Court of *Kings Bench* were of opinion that the reasons which he gave for his absence, after his return home, ought to have been admitted in explanation of his own act. 1*st. Philips' Ev.* 202. What a bankrupt said at the time of his doing an act, alleged as the act of bankruptcy, is receivable in evidence as being part of the *res gestæ,* and as evincing the intent with which the act was done, 1*st Saun. Plea. and Evi.* 68. Speaking on the subject of presumptive evidence, *Starkie,* in his treatise on evidence, 1 vol. 19, says, "The necessity of resorting to presumptive evidence is manifest. It very frequently happens that no direct and positive testimony can be procured ; and often when it can be had, it is necessary to try its accuracy and weight, by comparing it with the surrounding circumstances ;" so (p. 39) he observes, " From what has been said, it seems to follow that all the surrounding facts of a transaction, or as they are usually termed, the *res gestæ,* may be submitted to a jury, provided they can be established by competent means, and afford any fair presumption or inference, as to the question in dispute ; for as has been already observed, so frequent is the failure of evidence from accident or design, and so great is the temptation to

the concealment of truth, and misrepresentation of facts, that no competent means of ascertaining the truth, can or ought to be neglected." "Hence it follows, that facts remote from and irrelevant to the issue between the parties, are inadmissible, for no presumption can safely be drawn from them; and if such evidence does not tend to prejudice and mislead the jury, at least, it unnecessarily consumes the time of the court. The evidence must be confined to the fact or point in issue." When A, the holder of a bill, deposites it with B, as security for the balance of accounts between them, and after it is due, B endorses it to C, in an action by C against A, the account book of B is not evidence in diminution of the balance between A and B, but a contemporaneous entry or declaration would have been admissible. *2d Saun. Plead. and Ev.* 557. So, " where the party against whom the evidence is offered, was privy to the act, the objection ceases, it is no longer *res inter alios.* And in general, where the evidence is offered as a mere fact which is connected with the matter in dispute, and not with a view to affect the party, otherwise than as the actual existence of the fact affects the nature of the transaction itself, then, although it was a transaction between others, yet as a mere fact, and part of the *res gestæ*, it is evidence." *1st Starkie, Ev.* 52. Here the evidence was offered as a mere fact connected with the matter in dispute, and not with a view to affect the party otherwise, than as the existence of the fact evinced the nature and character of the transaction. The declarations offered in evidence in this case were made by the insolvent immediately, or a few days preceding the transfer in question, and tended directly to prove his contemplated or apprehended insolvency, and the entries showing a disposition of their effects to particular creditors, were also facts not remote from, but contemporaneous with, and immediately preceding, and subsequent to, such transfer; they were, therefore, in the language of *Starkie*, part of the *res gestæ;* nor can such declarations or entries be considered as made from sinister motives, because there was then no

controversy or *lis pendens,* in relation to the transfer, and the insolvents had no reasonable motives to misrepresent the truth.

We are, therefore, of opinion in this case, that the court below were right in receiving the declarations and entries as surrounding circumstances of the transanction, and a part of the *res gestæ,* showing the insolvent situation of the parties at the time, and that they contemplated becoming insolvent debtors, in consequence of the derangement of their affairs, and their utter inability to pay their debts.

JUDGMENT AFFIRMED.