Oelrichs & Lurman, *vs.* Ford.

(Decided June 1st, 1864.)

---

HENRY OELRICHS AND GUSTAV W. LURMAN, *vs.* BENJAMIN FORD.

PRINCIPAL AND AGENT.—The right of a principal to maintain an action on a written contract made by his agent in his own name, without disclosing the name of the principal, although formerly sometimes questioned, is now well settled.

62     V. 21

———: Parol Evidence.—It is also well settled, that, to prove the agency in such case, parol evidence is admissible.

Evidence: Principal and Agent: Res Gestæ.—The agent of B. F., in his own name, entered into a written contract with O. & L. for a sale of flour, and on the same day an entry of the sale, as made on behalf of B. F., was made in the agent's day book by his clerk; and a letter announcing the sale was written by the agent to his principal, who wrote a letter in reply, noting the sale without disapproval and commenting on the state of the market. In an action by the principal against the purchaser for a non-compliance with the contract of sale, Held:

1st. That this correspondence was competent and admissible evidence to prove, that the contract was made by the agent for and on behalf of the principal.

2nd. That the letter of the principal in reply to that of the agent, was evidence not only of his ratification of the contract, but of the agent's pre-existing authority and power to make it, as his agent.

3rd. That the question, of agency and the authority of the agent, necessarily depend upon the agreement between the agent and the principal, and may be evidenced by parol, or by writings entered into between them.

4th. It is true the agency may be proved by the agent himself. He is a competent witness *ex necessitate,* or upon grounds of public policy; but it is not necessary to call him to the stand if the agency can be proved *aliunde.*

5th. That the entry made in the agent's day book, was properly admitted in evidence as part of the *res gestæ.*

Practice in the Court of Appeals: Evidence.—If an objection to evidence goes to the whole evidence offered, it follows from the established rule of this Court, that there was no error in overruling the objection, if a part of the evidence offered was admissible, although a portion of it may have been inadmissible.

Principal and Agent: Contracts.—The effects of an agent's contracting in his own name, without disclosing the principal, are: *First.* That he thereby makes himself personally answerable for the fulfilment of the contract; and *second.* That the principal cannot interpose and claim the benefit of the contract, without giving to the other party who has dealt with the agent as if he were the principal, the benefit of all set-offs and other equities existing against the agent.

Contracts, Abandonment and Rescission of.—The inability of a party to perform his contract by reason of insolvency, amounts to an abandonment or rescission of it only when that inability exists at the time when the other party is entitled to demand its performance.

———: Usage: Evidence, Admissibility of.—O. & L. entered into and signed a contract for the purchase of flour from J. W. B., to be received from him from the 10th to the 20th days of January then following, they paying for the same at the rate of $9 per barrel on the day said flour was ready for delivery. J. W. B. was agent for a principal whose name was not dis-

Oelrichs & Lurman, *vs.* Ford.

closed. In an action on this contract by the principal against the purchasers, HELD:

1st. That by the terms of the contract O. & L. had no right to demand from J. W. B., nor from his principal, any other security for its performance; and until its breach by the vendor, (which could not occur before the time fixed for its performance,) or what would amount to a breach, viz: the inability of the vendor to comply with it at that time, the vendees had no right to rescind it, or to treat it as abandoned by the other party.

2nd. That evidence was inadmissible to show in explanation of said contract, that there existed an usage among a certain class of flour dealers in Baltimore City, accustomed to deal in time contracts for that article, under which the buyer or seller in such contracts might demand security, by way of a margin, to be put up by both whenever the faithful performance of a contract should be considered doubtful by either party."

3rd. That the Court cannot say that the purchasers had a right to rescind the contract for a failure to comply with such demand of a margin, when the usage, if admissible in evidence, is silent on that subject.

APPEAL from the Superior Court of Baltimore City:

This action was brought January the 10th, 1857, in the Superior Court of Baltimore City, by the appellee against the appellants, co-partners, trading under the firm of Oelrichs & Lurman, for a violation of the following contract:

"BALTIMORE, *October* 31st, 1855.

"For and in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, we have this day purchased from John W. Beall, and agreed to receive from the 10th to the 20th days of January next, at his option, one thousand barrels of Ohio Super flour and one thousand barrels Howard Street flour, we paying for the same at the rate of nine dollars per barrel, on the day said flour is ready for delivery.

1,000 Ohio,  } S. O.    OELRICHS & LURMAN,
1,000 How. St., }    10 & 20 Jan'y '56.—$9"

The defendants filed a plea alleging, that at the time of making said agreement there was a usage between said John W. Bell and the defendants, in their business with each other, whereby either party to such agreement might at any time between the making and the time of performance thereof, demand a reasonable margin to be put up

by both parties to secure the performance of the same, and require said agreement to be cancelled on the failure to put up said margin; that the defendants on the 22d of December 1855, demanded of said Bell a margin of $2,000 to be put up by him at the Merchants Bank of Baltimore, at which time and place the defendants were ready and willing on their part to put up said margin, but said Bell and the plaintiff failed to do the same, wherefore the defendants cancelled said agreement.

The defendants subsequently pleaded *non assumpsit*, and the plaintiff joined issue on both pleas. All errors of pleading were waived on both sides.

Four exceptions were taken by the defendants during the trial of the cause. The 1st exception was to the ruling of the Court below, (MARTIN, J.,) admitting certain evidence offered by the plaintiff and objected to by the defendants; the 2nd and 3rd exceptions to the refusal of the Court to admit certain evidence offered on the part of the defendants; and the 4th exception to the granting of the instruction offered by the plaintiff. The material facts embraced in these exceptions, as well as the questions arising thereon, and in the plaintiff's prayer, are very fully presented in the opinion of this Court, and in the dissenting opinion of the Chief Justice. The verdict and judgment thereon being for the plaintiff, the defendants appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. F. Frick*, for the appellants:

1. The plaintiffs instead of calling Bell, offered his declarations, viz: his letters and the entries on his books to prove the main fact, that he was their agent. This was in no sense other than hearsay, or secondary evidence, and not admissible under any of the exceptions to the rule excluding such testimony. Such declarations are only ad-

missible against and not in favor of the principal; and upon
the ground, that where the agency is proved and the acts
of the agent will bind the principal, then the representa-
tions, declarations, and admissions of the agent respecting
the subject matter of the act, if made at the time, and con-
stituting part of the *res gestæ*, will also bind the principal.
*Lauber vs. Shaw*, 5 *Mason*, 242.    *Greenleaf's Ev.*, vol. 1,
secs. 113, 416, 417.    *Story on Agency*, secs. 134, 135, 136,
137 and *seq.*, and notes.   Besides, these are declarations
not made to or in the presence of the parties to be affected
by them, but private communications between the alleged
agent and his principals; and there is no rule of evidence
under which third parties can be bound by such.   Where
the agency itself is the substantive fact to be proved,
against the principal, it may be done directly by the evi-
dence of the agent himself, or proof of his appointment; or
indirectly by evidence of the relative situation of the par-
ties, their usual course of dealing, or subsequent ratifica-
tion by the principal. This being first done, the declarations
of the agent within the scope of his authority are evidence
against the principal; because the question is not whether
the declarations are true, but whether they were in fact
made.   If they were, they bind the principal.   But when
the agency is to be proved by the principal, as against a
third party who has dealt with the agent as principal, the
alleged agent himself must be produced and subjected to
cross-examination. It is not allowable in such case to prove
this fact by hearsay; for the question then is not whether
the alleged agent made the statement that he was an agent
only, but whether the declaration was true, or to what ex-
tent, and subject to what qualifications, it was true. *Green-
leaf's Ev.*, vol. 1, sec. 191, and secs. 98 and 99.   *Starkie's
Ev.*, part IV., p. 55 and *seq.*, (*Lib. Ed.*, vol. 2, part IV. 42.)

II. The facts offered in evidence under the second excep-
tion it will be contended, were admissible on various
grounds.

Oelrichs & Lurman, vs. Ford.

1. If exclusive credit was given to Bell, his principal could neither sue nor be sued on the contract. *Story on Agency*, secs. 400, 423, *et seq.* The right to sue must be mutual. The defendants could not have maintained an action against Ford for non-delivery, under the contract, *after their election to give him no credit;* and he therefore had no claim against them for non-acceptance. *Story on Agency*, secs. 288, 289, 290, 291, and cases cited in the notes.

2. Supposing, however, that in such a case, the principal has a technical right of action, it is clear that the third party is entitled to be placed in the same situation, at the time of the disclosure of the real principal, as if the agent had been the sole contracting party. *Sims vs. Bond*, 5 *Barn & Adol.*, 393. The principal must take the contract subject to all equities, and liable to the same defences, as if the agent were the sole principal. *Story on Agency*, secs. 390, 419, 420, and cases in notes. Practically, this puts the case just as if the suits were in the name of Bell, and subject to such defences as arise (a) out of his absconding, and (b) his insolvency.

(a.) His absconding was a virtual abandonment of the contract, rendering its performance by him impossible. *Roper vs. Coombes*, 6 *Barn. & Cress.* 534, (13 *Eng. C. L. Rep.*, 246.) *Planche vs. Colburn*, 8 *Bing.*, 14, (21 *Eng. C. L. Rep.*, 203.) *Keys vs. Harwood*, 2 *C. B.*, (*M. G. & S.*,) 905, (52 *Eng. C. L. Rep.*, 904.) *Dubois vs. Delaware Canal Co.*, 4 *Wend.*, 285.

(b.) His insolvency superadded to his absconding, amounted to a rescission of the contract. *Cross on Lien*, 34 *Law Lib.*, 403. *Story on Sales*, secs. 424, 425 and 321. 1 *Parsons on Cont.*, 447, and cases referred to in note (k.) *Smith, et al., vs. Bowles*, 2 *Esp.*, 578.

3. But if it be urged that in this case performance of the contract was actually tendered, the answer is, that on the failure of Bell and in default of any security that the contract would be performed, the defendant at once, and properly, bought elsewhere the flour contracted for. This

he had a right to do. If goods sold are perishable or of fluctuating value, the vendors, in case of insolvency of the vendee before delivery, or his refusal to accept, may sell them without waiting for the period of credit to expire. *Sands vs. Taylor*, 5 *Johns. Ch. Rep.*, 395. *Girard vs. Taggart*, 5 *Serg. & Rawle*, 34. *Newhall vs. Vargas*, 15 *Maine*, 317. 2 *Parsons on Cont.*, 484.

III. The evidence offered under the third exception was rejected by the Court on the ground of its having been determined in a like case, (*Ford vs. Oelrichs & Lurman*, 23 *Howard*,) by the Supreme Court United States, to be inadmissible, as varying and adding to the written contract.

The general rule as announced by the Supreme Court, is not denied, but its application to the present state of the facts is disputed. It is not contended that evidence of usage is admissible to vary or to contradict, either expressly or by implication, the terms and provisions of a written contract, but it is claimed that in commercial transactions, extrinsic evidence of custom and usage is admissible to annex incidents to written contracts, in matters in respect to which they are silent. *Hutton vs. Warren*, 1 *M. & W.*, 475. *Greenleaf's Ev.*, vol. 1, sec. 294. Hence, an established custom, and, a *fortiori*, one specially recognized by both parties as invariably governing all their contracts of a certain kind, may add to such contracts stipulations not contained in them, on the ground that the parties must be supposed to have had these stipulations in their minds, as a part of their agreement, when they put upon paper or expressed in words the other part of it. *Parsons on Cont.*, vol. 2, p. 49, and cases in note (z.) *Bonner vs. Bank of Columbia*, 9 *Wheaton*, 581. *Bank of Washington vs. Triplett*, 1 *Peters*, 25. *Syers vs. Jonas*, 2 *Exchequer*, *Welsby, Hurlstone and Gordon*, 111. *Queen vs. Inhab's of Stoke upon Trent*, 5 *Q. B. (Ad. & Ellis N. S.,)* 303. 1 *Gilb. Ev.*, part II., 702. *Starkie on Ev.*, part IV., p. 1038. And especially the case of *Bliven, et al., vs. New England Screw Co.*, also in 23 *Howard*, 431, in which the Supreme Court in the

case of a written agreement to deliver goods to be manu-
factured within a certain time, allowed proof of a usage to
deliver only a part of the goods, where other orders inter-
fered with the delivered of the whole.

This suggests another ground upon which this evidence
ought to be admitted. Each party expressly agrees with the
other, that the contract between them is made with refer-
ence; and subject to the usage, &c. Now, where an agree-
ment between parties is one and entire, and only a part of
it is reduced to writing, the residue of the contract may be
proved by extrinsic evidence. Also, it is competent to
prove an additional or suppletory agreement by parol.
Therefore, whether the special agreement about the usage
was cotemporaneous with or subsequent to the written pa-
per, it is equally admissible. That would leave open only
the question, whether it was competent to prove by parol
what was meant by the term "margin," and about that
there can be no dispute. *Greenleaf's Ev.*, vol. 1, secs. 284 (a)
and 304. *Parsons on Cont.*, vol. 2, p. 65. *Jeffrey vs. Wal-
ton*, 1 *Starkie*, 267, (2 *Eng. C. L. Rep.*, 385.) *Knapp vs.
Harden*, 6 *C. & P.*, 745, (25 *Eng. C. L. Rep.*, 630.) *Coates
vs. Sangston*, 5 *Md. Rep.*, 131.

IV. The fourth exception refers to the Court's instruc-
tion, which is incorrect, if any of the points above made
are well taken.

*George Wm. Brown*, for the appellee, argued :

I. In reference to the first bill of exceptions, that the
agency of Bell was a fact to be proved like any other simi-
lar fact, and that the evidence admitted by the Court was
proper and competent. The question was only as to the
admissibility of the testimony. The defendants made one
specific objection to it, and to this objection they are now
confined, to wit: that it should have been shown that
Bell's testimony could not be procured; but there is no
rule of evidence, which requires the fact of the agency to be
proved only, or in the first instance, by the agent himself.

If Bell had been examined and denied the agency, the plaintiff had the right to prove the fact by other testimony. If the defendants required his testimony, they should have procured it, or made an endeavor to do so. *Ford vs. Williams*, 21 *How.*, 287.

II. In the second bill of exceptions the defendants offered in evidence a number of particulars, and on being asked by the Court for what purpose they were offered, stated that they did not offer the testimony as bearing on the question of fact, whether Bell was the agent of the plaintiff in making the contract, but as touching the plaintiff's right of action in case the jury should believe all the facts stated in the offer, and as touching the true measure of damages. The Court refused to permit the facts to be given in evidence for either purpose.

The plaintiff will contend, that the facts offered to be proved are one and all irrelevant, and inadmissible for either purpose for which they were offered, and if they had been admitted, were calculated to mislead the jury; and the bill of exceptions should name the different witnesses, and the facts expected to be proved by them respectively. *Ford vs. Williams*, 21 *How.*, 287. *Oelrichs & Lurman vs. Ford*, 23 *How.*, 49. 2 *Parsons on Cont.*, 485. *McNaughter vs. Cassally*, 4 *McLean*, 530. *Stanton vs. Small*, 3 *Sand. Sup. Ct. Rep.*, 230. *Hibblewhite vs. McMorine*, 5 *Mees. & Wels.*, 462. *Mortimer vs. McCallan*, 6 *Mees. & Wels.*, 58. *New Jersey Nav. Co., vs. Merch. Bank*, 6 *How.*, 381. *Salmon Falls Co., vs. Goddard*, 14 *How.*, 455. 2 *Smith's Le. Ca.*, 370, 371, 372. *Story on Agency*, sec. 161. 1 *Parsons on Cont.*, 53. 3 *Robinson's Prac.*, ch. 8, p. 34. *Patapsco Ins. Co., vs. Smith*, 6 *H. & J.*, 167. *Sims vs. Bond*, 5 *Barn. & Adol.*, 393, (27 *Eng. C. L. Rep.*, 97.) *Higgins vs. Senior*, 8 *Mees. & Wels.*, 834. *Beckham vs. Drake*, 9 *Mees & Wels.*, 78, and 11 *Mees. & Wels.*, 315. *Dykes Alexander vs. Barker*, 2 *Twyrrh.*, 140. *Trueman vs. Loder*, 11 *Adol. & Ell.*, (39 *Eng. C. L. Rep.*, 178.) *Byles on Bills*, 27. *Russell on Factors*, 246; 48 *Law Lib. Bank U. S. vs. Lyman*, 20 *Verm.*,

Oelrichs & Lurman *vs.* Ford.

673, 674, 676. *Williams vs. Bacon,* 2 *Gray*, 387. *Hubbert vs. Borden,* 6 *Wharton*, 92. *Bateman vs. Phillips*, 15 *East.*, 272. *Elkins vs. Boston, &c., R. R. Co.*, 19 *N. H. Rep.*, 342. *Sargent vs. Morris,* 3 *Barn. & Adol.*, 277, (5 *Eng. C. L. Rep.*, 283.) *Huntington vs. Knox,* 7 *Cush.*, 374. *Walshe vs. Provan,* 20 *Eng. Law & Eq.*, *Rep.*, 573. *Phelps vs. Prothero,* 32 *Eng. Law & Eq. Rep.*, 474. *Humphrey vs. Lucas,* 61 *Eng. C. L. Rep.*, 152. *Skinner vs. Stocks,* 6 *Eng. C. L. Rep.*, 478. *Beebee vs. Robert,* 12 *Wend.*, 413. *Taintor vs. Pendergrast,* 3 *Hill,* 72. *Sanderson vs. Lamberton,* 6 *Bing.*, 129.

III. In the third bill of exceptions the defendants again offered the testimony stated in the second bill of exceptions, and, in addition thereto, a number of particulars in reference to an alleged usage. The testimony offered in the second bill of exceptions has not the slighest bearing on the point raised in the third, and therefore was properly rejected. But the new testimony offered in the third bill of exceptions was also inadmissible. An usage, to be valid, must be general, reasonable and certain. This usage which is said to prevail "among a certain class of flour dealers in Baltimore City, accustomed to deal in time contracts for that article," is not general. It is not even an usage of that entire class, but of a part, it may be of a small part of the class. It was not competent for the defendants to prove, as they offered to do, that it had been acted upon "in numerous cases," because numerous cases do not constitute a general usage. The pretended usage does not state any rule by which a margin "reasonably sufficient" may be determined. The usage is said to be, that "a margin may be demanded whenever the faithful performance of such a contract should be considered doubtful by either party." The doubt may be wholly ridiculous and unreasonable, but if either party chooses to entertain it, or say that he does, he may demand a margin. Such an usage is not reasonable, and cannot be valid. No usage is reasonable which authorizes a party to act unreasonably.

The cause for which the margin may be demanded is not sufficiently certain. It is said to be, "whenever the faithful performance of such contract should be considered doubtful by either party." Various causes may render the faithful performance of a contract doubtful, such as death, war, impossibility of obtaining the article at the proper time, dishonesty or insolvency of the party. (Is it meant that the usage embraces all such cases? If so, it should so state.) But such a usage would not be reasonable. It does not say what notice of the demand for a margin is to be given, nor what is to be done with the margin, if put up; and is therefore not certain.

But even if the testimony offered were sufficient to prove an usage, and it were general, reasonable and certain, it would not avail in this case; for it does not appear that by the usage, as stated, either party has a right to rescind the contract, if the demand is not complied with. If the defendants had a right to demand security, and did so in the proper way, they have their remedy by suit against the plaintiff for his failure to comply with the demand, but not a right to cancel the contract. The defendants in their letter to J. W. Bell, dated 22d December 1855, which is offered as part of the testimony in said exception, do not assert that they have a right to rescind the contract on the ground of usage, but place their claim on an "understanding," or contract.

The Court therefore was right in excluding the entire testimony offered in the third bill of exceptions:

1st. Because a great portion was wholly irrelevant, and the rest relating to the usage was illegal, for the following reasons:

2nd. Because the alleged special usage of Bell and the defendants, and their admission of that fact, could not control the written contract. It does not appear when said admission was made. Even if it had been made at the date of the contract, any conversations and verbal understanding were merged in the contract, and parol evidence was inadmissi-

ble to engraft them upon it, and the usage as alleged is not certain, and therefore not valid, and did not authorize a rescission of the contract.

3rd. Because the alleged usage among a certain class of merchants in Baltimore was not valid, not being general, reasonable and certain.

4th. Because if proved it did not authorize the rescission of the contract.

5th. Because the clear and positive terms of the written agreement cannot be varied or contradicted by the proof of any usage.

6th. Because the notice given was insufficient, as it relies on an alleged understanding between the parties, and not upon the usage.

7th. Because the defendants had no right to require the arbitrary sum of $1 per barrel to be put up on a contract on which, at the time of the demand, they were in fact losers, without tendering any proof that such amount was reasonable. Nor had they a right to select the Merchants bank as the place of deposit of the plaintiff under the penalty of a cancellation of the contract.

8th. And because the bill of exception should name the different witnesses, and the facts expected to be proved by them respectively. *Oelrichs & Lurman vs. Ford*, 23 *How.*, 49. *United States vs. Buchanan*, 8 *How.*, 83, 102. *Williams vs. Woods*, 16 *Md. Rep.*, 220. *Foley vs. Mason*, 6 *Md. Rep.*, 50. *Adams vs. Otterback*, 15 *How.*, 545. *Brittan vs. Barnaby*, 21 *How.*, 538. 1 *Greenleaf's Ev.*, secs. 275, 278, 281, 284, 288, 292, 293, 294. *Coxe vs. Heisley*, 19 *Penn. State Rep.*, 247. *Macy vs. Ins. Co.*, 9 *Met.*, 363. *Brown vs. Stoddard*, 10 *Met.*, 381. *Adams vs. Wordley*, 1 *Mees. & Wels.*, 374. *Magee vs. Atkinson*, 2 *Mees. & Wels.*, 442. *Trueman vs. Loder*, 11 *Adol. & Ell.*, 596. *Allen vs. Dykers*, 3 *Hill N. Y.*, 597. *Hinton vs. Locke*, 5 *Hill N. Y.*, 437. *Gross vs. Criss*, 3 *Gratt.*, 262. *Macomber vs. Parker*, 13 *Pick.*, 182. *Hone vs. Mutual Ins. Co.*, 1 *Sand. Sup. Ct. Rep.*, 137. *Barlow vs. Lambert*, 28 *Ala.*, 710. 1 *Smith's*

*Le. Ca.*, 307, 308, 309, margin; and see note of *II. B. W.*, to p. 309. *Bouce vs. Gatliff*, 11 *Cl. & Fin.*, 45, 70. *Ford vs. Yates*, 2 *Man. & Grang.*, 549. *Browne on St. Frauds*, 116, secs. 118, 448, 451. 2 *Parsons on Contracts*, 59.

IV. The instruction given by the Court in the fourth bill of exceptions, is in the language sanctioned by the Supreme Court of the United States, in the case of *Oelrichs & Lurman vs. Ford*, 23 *How.*, 49, and is correct.

BARTOL, J., delivered the opinion of this Court:

This action was brought by the appellee to recover damages, for an alleged violation by the appellants of their contract to purchase two thousand barrels of flour. The contract is in writing made by the appellants with one John W. Bell. The appellee claims the right to sue, on the ground that he was principal, and that Bell, in making the contract, acted as his agent.

The right of a principal to maintain an action on a written contract made by his agent in his own name, without disclosing the name of the principal, although formerly sometimes questioned, is now well settled. See *Ford vs. Williams*, 21 *How.*, 287. *Hubbert vs. Borden*, 6 *Wharton*, 79. In this case this question was very fully considered by the Supreme Court of Pennsylvania, in an able opinion delivered by Judge Kennedy.

It is also well settled, that to prove the agency in such case, parol evidence is admissible; such proof does not vary or contradict the writing, but merely establishes a separate collateral fact, namely the relation existing between the party contracting for him, and for whose benefit the contract is made; or in other words, the authority under which the agent acts, out of which grow the rights and obligations of the principal under the contract.

In this case the first exception was taken by the defendants below to the evidence offered, for the purpose of proving that in making the contract sued on, Bell acted as the agent of the plaintiff. This evidence consisted of the cor-

respondence between Bell and the plaintiff, and the entry on the day-book of Bell made by his clerk on the day of the sale.

The contract was made on the 31st of October 1855, for 1000 barrels Ohio super flour, and 1000 barrels Howard street flour, at $9 per barrel, to be delivered at the option of the seller, from the 10th to the 20th of January following:

On the same day the following entry was made in Bell's day-book by his clerk:

Sold O. & Lurman for B. Ford.

1000 Hd. St.
1000 Ohio. } 10 to 20 Jan'y, $9.

On the same day Bell wrote to the plaintiff the following letter:

BALTO., *Oct.* 31, 1855.

MR. BENJ. FORD, *D. Sir:*—Your favor of yesterday covering acc. sales 352 bbls. flour. Our market not active as yesterday, moderate sales at $9.

I sold for you this morning and telegraphed you:

1000 Ohio, } Sellers option at $9,
1000 How. st. } 10th to 20th Jan'y.
2000 How. st. at $9, all February.

———

4000

I could not sell for all January, but came as near it as I could. These are good sales you may depend. Your average is now a good one; should prices advance further, sell more at a higher price. This plan can't fail to come out right. Resp'y JN. W. BELL.

The following letter was also offered in evidence:

NEW YORK, *Nov.* 1, 1855.

JOHN W. BELL, ESQ., *Dr. Sir:*—Yours of 31st ulto. at hand, and I see you have sold 2000 bbls. flour for Jan'y to 20th, and 2000 bbls. flour for Feby. Things are very quiet here to-day, all waiting for steamer; considerable selling at $12\frac{1}{2}$ on 8.87, and some on 9, for the steamer now due.

It is very hard to say how flour will work, receipts are

not so large for last two days—more wheat coming than flour, being higher. It will be surprising if they keep flour at present prices, with the great abundance of every thing in the country; three weeks will determine. The demand coming so early looks as though they were deficient considerably. · Respectfully, yours, &c., BENJ. FORD.

In addition to the above evidence the plaintiff proved, that he was a flour merchant in the City of New York, and that Bell was then extensively engaged in Baltimore as a flour merchant, and bought and sold flour both on his own account and on commission.

In the opinion of a majority of this Court the correspondence was competent and admissible evidence to prove that the contract was made by Bell for and on behalf of the plaintiff as his agent. There can be little doubt that the sale referred to in Bell's letter of the 31st of October, is the same evidenced by the contract; although the defendants' names are not mentioned in the letter, the date, quantity, price and terms are the same. Nor can there be any doubt that the letter of the plaintiff is evidence not only of his ratification of the contract, but of Bell's pre-existing authority and power to make it as his agent. Supposing this correspondence to be in good faith, of which the jury was to judge, it would seem to be difficult to conceive of stronger proof of agency. The objection that the defendants were no parties to that transaction, and ought not to be bound by it, has no force. Their rights and obligations under the contract, are in no manner changed or affected thereby. The questions of agency, and the authority of the agent necessarily depend upon the agreement between the agent and the principal, and may be evidenced by parol, or by writings entered into between them, and such proof it seems to us is free from all objection. It is true the agency may be proved by the agent himself, he is a competent witness *ex necessitate,* or upon grounds of public policy; but it is not necessary to call him to the stand if the agency can be proved *aliunde.*

This question arose in the case of *Hubbert vs. Borden*, 6 *Wharton*, before cited, and was expressly decided in conformity with the views above expressed. In that case the contract in writing sued on by Borden, was made with the defendant by Thomas and Martin in their own name, and the Court say, (page 96,) "That the correspondence between the plaintiffs and Thomas and Martin, was properly admitted, because it showed the authority, which the latter had from the former, to make the contract on their behalf, and likewise the terms and conditions upon which it was to be made with the defendant."

The objection taken at the trial, and embraced in this exception, going to the whole evidence offered, it follows from the established rule of this Court that there was no error in overruling the objection, if a part of the evidence was admissible, although a portion of it may have been inadmissible. This rule would entitle the appellee to an affirmance on this exception, even if the entry from the day-book were held to be illegal testimony. With reference to that, however, a majority of the Court are of opinion that it was properly admitted in evidence as a part of the *res gestæ*. 1 *Greenleaf's Ev.*, sec. 115. Of course the honesty and good faith of that entry, as well as of the correspondence, if they were denied, were proper questions for the jury.

*Second exception.* The questions presented by this exception were argued with great ingenuity and ability by the appellants' counsel, and are certainly not free from difficulty; but after the best consideration we have been able to give them, a majority of the Court are of opinion the ruling of the Superior Court was correct and ought to be affirmed.

This exception was taken to the rejection of a mass of evidence offered by the defendants, a brief statement of which is necessary in order to show the questions involved in its decision. The plaintiff having proved that on the 19th of December 1855, Bell disappeared from his place of

business and never returned to Baltimore, no one knowing what had become of him, and leaving his affairs in an insolvent condition, and that he went to California where he has since resided; then proved by George Wm. Brown, Esq., that he called as the plaintiff's attorney, in company with John H. Ford, son of the plaintiff, on the 29th December 1855, upon Mr. Frick, the attorney of the defendants, having been referred by the defendants to Mr. Frick, and showed to him the contract in question of the 31st of October, and informed him that the same was made by Bell for him, the plaintiff, as principal, and that he would comply with it. Mr. Frick replied, that the plaintiff had not put up any money under the contract; to which Mr. Brown replied, that he denied the right of the defendants to demand any, but that the plaintiff was prepared to do any thing required by the contract. Mr. Frick then said that the defendants did not know the plaintiff in the transaction, and considered the contract at an end.

The plaintiff then proved that, on the 16th of January 1856, in pursuance of the contract, he tendered to the defendants 1000 barrels of Ohio Super flour, and 1000 barrels of Howard street Super flour; but the defendants refused to receive it. The market price of flour on that day was $8 per barrel. The defendants then proved that on the 31st of December 1855, they purchased from Mr. Hincks 6000 barrels of the same kind of flour mentioned in the contract, deliverable in the ensuing January and February at $8.75 per barrel.

The defendants then proceeded to offer evidence, to the rejection of which this exception was taken, substantially as follows:

That the defendants were shipping merchants largely engaged in purchasing flour for exportation to Europe to fill orders to them from abroad. That the existence of the Crimean war at that time had produced an extraordinary demand for American bread stuffs, which rendered it necessary to make contracts in many instances for flour to be

delivered at a future day, and that the price of flour at that period was constantly fluctuating and varying with the arrival of every steamer. On account of the negotiations for peace then pending and the uncertainty of the result, the price would vary from two to three dollars a barrel in forty-eight hours. That the contract with Bell was made by the defendants in order to enable them to fill in part their orders from abroad. At that time Bell was a general flour merchant, selling on his own account as well as on commission, and in excellent standing and credit. That Bell absconded on the 19th of December 1855, leaving his affairs in an insolvent condition, and his property was immediately seized by his creditors, under attachments against him as an absconding debtor. That at the time of his absconding, Bell had many contracts outstanding, like that offered in evidence, for the future delivery of flour; and that the opinion of the best informed merchants in Baltimore at that time was, that flour would reach the price of $12 a barrel in the January and February ensuing. That after the absconding of Bell, the defendants demanded at his store of his chief clerk, security for the performance of the contract, and failing to receive it, they at once bought flour to replace that which he had agreed to furnish at $8.75 per barrel. That on the 29th of December 1855, the plaintiff, who was a flour merchant of New York, gave notice to the defendants, that he claimed to be principal in the contract, and offered to perform it. That plaintiff was at that time known to the defendants, and generally known to be a broken merchant without any credit or standing, and that they refused to give him credit, or take him for the contract, unless he would give security for its performance, which he refused to do. That the defendants in making the contract with Bell, treated him as principal, and never heard of the plaintiffs having or claiming any interest in the transaction, until his notice to them of the 29th of December. This evidence was offered for two purposes: first, in bar of of the action; and secondly, in mitigation of dama-

ges; and in the opinion of a majority of the Court it was not admissible for either purpose.

By the well established law of agency, the principal may maintain a suit upon a contract made for him by his agent, as well where he is not named or known to the other contracting party, as where the principal is disclosed by the contract. The effects of an agent's contracting in his own name without disclosing the principal, are *first*, that he thereby makes himself personally answerable for the fulfillment of the contract; and *secondly*, that the principal cannot interpose and claim the benefit of the contract, without giving to the other party, who has dealt with the agent as if he were the principal, the benefit of all set-offs and other equities existing against the agent. *Story on Agency*, sec. 420. "But subject to these rights and those of the agent," says the learned author, in the section referred to, "the principal may generally sue upon such a contract, in the same manner, as if he had personally made it."

This brings us to the inquiry, what were the rights of the defendants under their contract with Bell—assuming as we must do for the purposes of this exception, that they gave credit to him exclusively in making the contract? The appellants' counsel has argued, that when he proved insolvent and absconded, there was a virtual abandonment of the contract on his part; his performance of it being thereby rendered impossible, which authorized the vendees to treat it as rescinded. We have found no case going so far as to sustain this proposition, and we think the error of the learned counsel grows out of a misapprehension of the nature of the contract. The inability of a party to perform his contract by reason of insolvency, amounts to an abandonment or rescission of it, only when that inability exists at the time when the other party is entitled to demand its performance. It is true that a vendor who has sold goods on time, giving credit to the vendee, may refuse to deliver them, if the vendee becomes insolvent before

the possession has passed, and in some cases may stop them *in transitu.* This grows out of the lien of the vendor upon the goods, as a security for the purchase money; but the contract is not thereby rescinded. *Story on Sales, sec.* 320. And no case can be found of a contract of sale for cash on delivery to be made at a future day, where it has been held that the vendor may refuse to deliver the goods on the day, if the cash be then tendered, on the ground that the vendee had become insolvent in the mean time. Nor does such insolvency entitle the vendor to rescind the contract. The rights and obligations of the parties in such case are correlative. Under the contract before us, the defendants contracted with Bell, relying exclusively upon his ability to deliver the flour purchased at the time named. By the terms of the contract they had no right to demand from him, nor from his principal, any other security for its performance, and until its breach by the vendor, which could not occur before the time fixed for its performance, (or what would amount to a breach, viz: the inability of the vendor to comply with it at that time,) the vendees had no right to rescind it, or to treat it as abandoned by the other party. Such stipulations might have been made as would have conferred such rights upon the vendee; but it contains no such provisions, and the parties must be held bound by their engagement according to its terms.

A great many authorities were cited by the appellants' counsel, to support his views on this part of the case; they have been examined, and without referring to them here particularly, we think the principles above stated are sound and not inconsistent with the authorities cited: and we conclude that the evidence offered by the defendants, and contained in this exception, was properly rejected, as irrelevant and incompetent testimony for either of the purposes mentioned.

*Third Exception.* In this exception, the defendants, in addition to the evidence contained in the second exception, offered to prove a usage among flour dealers in Baltimore,

governing contracts of this kind, which is particularly set out in the defendants offer, (and stated *ante* pp. 491 and 492.) A majority of this Court are of opinion that there was no error in rejecting this evidence. Under the usage, the defendants claimed the right to rescind the contract upon the failure of the other party "to put up a margin" on demand, that is, to deposit a sum of money as a security for the performance of the contract. In treating upon this exception, the offer must be considered as if the proof was actually produced in the terms therein stated, and we think that even supposing the proof of such usage were admissible to affect the contract, the offer is insufficient, and falls short of establishing the defence. In the offer it was certainly necessary to state as a part of the usage, that in the event of either party failing to put up the margin demanded in a reasonable time, the other party had the right at his option to cancel the contract. In the offer this is not stated, though in the appellants' argument it was assumed that such was the usage. The Court cannot infer that such a result would follow. It is not a matter of legal conclusion, but ought to appear as matter of fact, as part of the usage.

If one party fail to do a collateral act, which the other has a right to demand, it will not follow as a legal consequence that the contract is for that reason void, or may be wholly rescinded. That would be the effect of a failure to comply with the contract itself, which in this case was to deliver 2000 barrels of flour at a future day. Now the usage offered to be shown is, "that in the mean time either party has a right to demand a margin to be put up, reasonably sufficient to secure the performance of the contract," but is altogether silent as to the consequences of a failure to comply with such demand. Under such usage, the Court cannot say the defendants had a right to rescind the contract for that reason, when the usage, as set out in the offer, is silent on that subject.

But this question is more speculative than material in this case, because in our opinion the usage as described in the

offer was wholly inadmissible to affect the construction of the contract. This opinion was expressed by the Supreme Court in a case between the same parties, 23 *Howard,* 63, where an attempt was made to establish a similar usage; as set out in the offer we think it is vague, uncertain and unreasonable. And these objections are not removed by the offer to prove by the declarations of the parties, or their verbal understanding, that their dealings were made with reference to and subject to the usage. Such evidence could not control the written contract. The effect of admitting such testimony would be to set up as many usages as there may be contracts made, and to open the door for the admission of parol evidence of the particular customs of parties and their modes of doing business, to determine their legal rights and obligations, which ought to depend only on their agreements as they have made them in writing.

The fourth exception was taken to the instruction given by the Court to the jury. But it is conceded by the appellants' counsel to be free from objection, unless there was some error in the ruling of the Court upon the other bills of exception. It is in the language sanctioned by the Supreme Court, in the case before referred to, in 23 *Howard.*

Bowie, C. J., dissented, and delivered the following opinion :

These cases, depending in a great measure upon the same leading facts, and the same general principles, have been argued, and will be considered together. They present questions of great interest to the commercial community.

The first exception in each, is to the admission of certain letters and telegrams to and from a supposed agent, Mr. Bell, to the plaintiffs, and entries of a deceased clerk of Bell, to show that the contract sued upon, which was made in the name of Bell with the defendants, was made by him

as agent of the plaintiffs, before the agency was proved *"aliunde."*

The second exception in Ford's case, and third in Artz', are to the refusal of testimony offered by the defendants, tending to show they gave exclusive credit to the supposed agent, Bell, who dealt *"suo jure,"* and did not disclose his principals; such evidence being offered to show the plaintiff had no right of action.

The third exception in Ford's case, and fourth in Artz', are to the rejection of testimony offered by the defendants, of a special usage, existing between a certain class of merchants, and particularly between the appellants and the supposed agent, Bell, which annexed incidents to the contract and governed and controlled it.

The fourth exception in Ford's, and fifth in Artz' second case, arise on an instruction given by the Court at the instance of the plaintiff, presenting the same propositions covered by the preceding exceptions. The second and sixth exceptions in Artz', case, are peculiar to that, relating to the admissibility of certain witnesses, which will be considered separately.

The contracts declared upon are memoranda in writing, dated "Baltimore, 31st October 1855, and 24th November 1855, respectively," in the following form, varying only in date and sums:

"For and in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, we have this day purchased from John W. Bell and agreed to receive from him, from the 10th to the 20th days of January next, at his option, 1000 barrels of Ohio Super flour, and 1000 barrels Howard Street Super flour, we paying for the same at the rate of $9 per barrel, on the day said flour is ready for delivery." Signed by the defendants, "Oelrichs & Lurman." To prove these contracts were made by Bell, therein named as agent of the plaintiffs, (the appellees,) they offered in evidence certain letters from the plaintiffs to Bell, and from Bell to the plaintiffs, dated Baltimore 31st Octo-

ber 1855, and the other from the plaintiffs to Bell, dated New York, Nov. 1, 1855, and certain entries on the day book of Bell, in the hand writing of a deceased clerk of said Bell: To the admissibility of which, as proper and competent testimony for the purpose for which they were offered, (it not having been shown that Bell's testimony could not be procured,) the defendants objected, but the Court overruled the same and permitted it to go to the jury, to which the defendant excepted.

The memorandum or contract being in the name of a third person, not a party to the suit, the first link in the chain of proof, was evidence of the agency of the person, with whom the contract purported to be made, before the act of that person could confer a right of action on the plaintiff. The letters and entry excepted to, are only admissible as declarations or admissions in writing, of *a party to the contract*, or as part of the *"res gestœ,"* or transaction which was the subject in controversy.

Whether the testimony excepted to were declarations or admissions, or *"res gestœ"* of a party to the contract, depended upon the fact of the existence of the relation of principal and agent, between the plaintiff and Bell. *"Where the acts* of the agent will *bind* the principal, *there* his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time, and constituting part of the *"res gestœ."* They are of the nature of original evidence, and not of hearsay; the representation or statement of the agent in such cases, being the ultimate fact to be proved, and not an admission of some other fact. 1 *Greenleaf's Ev., sec.* 113. *Story on Agency, secs.* 134, 137.

The exception to the evidence is, that it is not proper and competent for the purpose of proving that Bell was the agent of the plaintiff, it not being shown that Bell's testimony could not be procured. Written and verbal declarations of an agent, when admitted as *"res gestœ,"* are regarded in the nature of original evidence and not hear-

say, because they are assumed to be the acts of the principal. The admissions bind him only when they are made during the continuance of the agency *"dum servet opus."* *Greenleaf's Ev.*, sec. 113. They are verbal acts indicating a present purpose or intention, allowed with the view of illustrating or explaining something equivocal. They are not used to prove the authority of the declarant or writer, when that is in question. That authority must be presupposed, admitted or established before such declarations could be received, otherwise they would be *"res inter alios acta."* Their admission is founded on the legal identity of the agent and principal. *Id.*, sec. 114.

Where the evidence is offered as a mere fact, which is connected with the matter in dispute, and not to affect the party otherwise than as the actual existence of the facts affects the nature of the transaction itself, then, although it was a transaction between others, yet, as a mere fact and part of the *res gestæ*, it is evidence. 1 *Stark. Ev.*, 52. *Kolb vs. Whitely*, 3 *G. & J.*, 198.

The ultimate fact to be proved in this instance, was not whether such letters were written or such entries made, but whether a contract made in the name of Bell, referred to in those letters, or entries, was made on behalf of the plaintiff. The term *hearsay* is used with reference to that which is written, as well as to that which is spoken, and in its legal sense denotes the kind of evidence which does not derive its value solely from the credit to be given to the witness, (or writing,) but rests also on the veracity and competency of some other person. 1 *Phil. Ev.*, 185. 1 *Greenleaf's Ev.*, 99. "It is uniformly held incompetent to establish any specific fact, which, in its nature, is susceptible of being proved by witnesses who can speak from their own knowledge." These letters and entries still rested on the veracity of another or other persons who were not sworn. "That this species of testimony supposes something better which might be adduced in the particular case, is not the sole ground of its exclusion. *Its intrinsic weakness, its in-*

*competency to satisfy the mind* as to the existence of the fact, and the frauds which may be practised under its cover, combine to support the rule, that hearsay evidence is totally inadmissible," per Marshall, C. J. *Queen vs. Hepburn*, 7 *Cranch.*, 290, 295.

The application of these principles is forcibly illustrated in a series of decisions in this State. Among the first of these, is the case of the *City Bank of Baltimore vs. Bateman*, 7 *H. & J.*, 104, it was proposed to prove what the president of the bank, an acknowledged agent of the defendant for some purposes, said to a *sub-officer* of the bank as to a particular bag of dollars. The general rule is explicitly, although incidentally, declared to be, "that where an agency is sufficiently established, the acts and declarations of the agent, within the scope of his authority, are to be considered as the acts and declarations of the principal, of which evidence may be given."

In *Buckmyer vs. Whiteford*, 1 *Gill*, 127, the plaintiff sought to prove his legal interest in the cause of action (a dishonored draft) by proving a letter written by himself to the cashier of the bank, through which it had passed for collection. It was not proved that the letter was written on the day it bore date. Waiving this objection, the Court said: "We cannot distinguish between the statements reduced to writing in this letter, and the same statements by the same persons at the same time and under similar circumstances, made verbally." * * * "If the person, to whom the letter was addressed, had been called to prove the appellee (the plaintiff below) had made to him the same declarations verbally, it would have been in direct violation of that admitted rule of evidence, which prohibits a party from testifying in his own case; and in this case the facts show, that it was made evidence in despite of another principle, which requires the best evidence the nature of the fact affords." *Id.*, 149.

In *Harker vs. Dement*, 9 *Gill*, 16, an action of trover for the conversion of certain slaves, it was proposed to prove that

Briscoe, the supposed agent, at the time of taking the property, stated he came and took the slaves by the authority of the plaintiff. The Court held: "No proof *aliunde* was offered to show that the plaintiff had invested Briscoe with authority to sell these slaves, and it is a clear principle, that even if Briscoe had been introduced as a witness, the fact of his authority could not have been established by his own declarations." In support of the last proposition, the case of *James vs. Storkey*, 1 *Wash. C. C. Rep.*, 330, is referred to.

Washington, Justice, in *Blight vs. Ashley*, 1 *Peters Cir. Ct. Rep.*, 21, said: "There are certainly some cases where the declarations, or letters of an agent, are proper evidence, *and others where he must be examined, and his letters are not evidence if he be alive.* The distinction rests upon the principle, that *the best evidence must be produced.* If the object is to prove a fact, the agent is the proper person to prove it, and his evidence is better than his declarations. If his letter contains an acknowledgment of a fact, it is not as good evidence of the fact as proof given by himself. But if the object is to prove what were the motives or inducements for a man to contract with the agent, what were the statements made by him, his letters or conversation are proper evidence, not of the facts stated in them, but that such inducements and statements were made.

The earliest English decisions are in accordance with those of our own State.

In *Masters vs. Abraham*, 1 *Esp. Rep.*, 375, the question was, which party was to find bags for the carriage of bark sold on delivery. To prove the defendant had agreed to furnish the bags, the plaintiff proved the bark had been sold by one Eyre a broker, and produced the letter from Eyre, who was at that time in the box as a witness. It was insisted on the one hand, that Eyre should be questioned as to the facts, and the letter should not be produced; on the other, that Eyre was employed by the defendant who was therefore bound by his acts, and his letter was evi-

dence against his principal. Lord Kenyon said that, as agent, he would admit evidence of what he had done on account of the defendant, but that should be learned from himself, not his letter.

The case of *Langhorn vs. Allnutt,* 4 *Taunton,* 516, Lord Mansfield, upon the question of the admissibility of the letters of the plaintiffs' agents, held: "It is impossible to find any principle upon which they can be received." * * * "If the circumstances had arisen at Exeter or London, there would have been no question; no one would have thought of offering letters of a person written at Exeter as receivable in evidence here, and if that is the rule with respect to transactions which take place in England, how can we differ it with relation to the distance at which the transaction takes place. There is no known principle of law according to which the circumstance of an agent, residing abroad, makes it practicable to give a letter in evidence, which could not be received if the agent lived in England. There is a mode of examining witnesses abroad by commission, though it is tedious and expensive, but notwithstanding those inconveniences, we cannot substitute this for it to the same effect." *Vide Kahl vs. Jansen,* 4 *Taunt.,* 571.

Chief Justice Tindall, commenting on this species of evidence, says: "It is dangerous to open the door to declarations of agents, beyond what the cases have already done. The declaration itself is evidence against the principal, though not given on oath. It is made in his absence, when he has no opportunity to dispute or correct it by any observation or by any question put to the agent, and it is frequently before the Court and jury after a long interval of time. Evidence of such a nature ought always to be kept within the strictest rules to which the cases have confined it." *Garth vs. Howard,* 8 *Bing.,* 453.

There is much force in the distinction urged by the appellants' counsel, between the proof of agency against a principal, and proof of agency by the principal. In the former instance, the evidence must consist mainly of acts,

admissions, declarations, conduct or correspondence, the
actual mode of creating the agency being unknown to the
plaintiff; in the latter, the plaintiff in proving the agency,
is proving his own acts; he is in possession of all the infor-
mation necessary to establish the fact. Hence, the best evi-
dence in the nature of the case should be required. The
party's admission may be given in evidence against him,
but not for him. Letters are but declarations in writing;
if offered in evidence to show a course of dealing, from
which agency might be presumed, they would be admissi-
ble, their genuineness being proved, provided there was no
better evidence to be adduced.

Where the correspondence is confined to a single trans-
action, which is the subject of suit, limited to one letter on
each side, and the agent is not shown to be beyond the
reach of the tribunal in which the suit is pending, such
letters of themselves have none of the moral tests of truth,
and to admit them would, in the language of this Court, be-
fore cited, "violate two cardinal rules of evidence, that no
man should be a witness in his own cause, and that the
best evidence in the nature of the case should be pro-
duced." The preponderance of authorities, especially in
this State, we think sustains these views. The entry in
the day-book of Bell, being cotemporaneous with the sup-
posed sale, made by a deceased clerk, in the ordinary course
of business, would be evidence either for, or against Bell,
as the entry of his deceased employee, as between himself
and defendants, but to make them evidence against the de-
fendants at the suit of Ford, it must be shown they dealt
with him as an agent of the plaintiff, and not "suo jure."

These entries are admitted upon the same theory as the
declarations above considered, (the identity of the agent
and principal,) when used as a part of the res gestæ. The
relation of agent and principal must first be assumed, be-
fore any connection can be established between such entries
and the supposed sale. If Bell's written or verbal admis-
sions were not evidence, because he was not shown to be

the agent, the admissions of his clerk, whether living or dead, could not be. ·The act of an agent (the relation of principal and agent being unproved) adds nothing to the weight of the testimony. Public convenience has induced the Courts to relax the rule of evidence to a great extent, in admitting the testimony of agents, clerks, carriers, brokers and servants, but they are not disposed to carry the doctrine of *Price vs. Tonington*, 1· *Salk.*, 285, any further. 11 *M. & W.*, 775, 776. *Walsh vs. Gilmer*, 3 *H. & J.*, 383.

The appellants' second exception in Ford's case, and third in Artz', involves the liability of the appellant to the plaintiff, if in dealing with Bell, they dealt with him as principal or as agent, giving exclusive credit to him as such. The rule is well established that, when from attendant circumstances, it is clearly manifest that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had to any others, than those named in the contract, no other can sue. *Story on Agency*, sec. 160, a. 268, 400, 423. This results from the right every agent has, on the one hand, to deal in his individual right, or as factor, and the correlative right of others, to deal with the agent in either capacity. The liberty of the individual to contract, is not restrained by his becoming a commission·merchant, factor or broker.

Such being the law, it is incumbent on us to inquire whether there was in the testimony offered sufficient basis for such a defence. When the evidence excepted to was offered, the Court required the defendants to state the purpose for which they offered it, and the defendants stated, "that they did not offer it as touching the question whether Bell was, in fact, the agent of the plaintiff, but as affecting the plaintiffs' right of action on the contract, and also, as touching the amount of damages, to which plaintiff was entitled, if he had a right to recover. The Court refused to admit the evidence for either of these purposes. This is an indirect way of raising the question of the effect of giving exclusive credit to the agent, but it seems to be neces-

sarily involved in the proposition to give it in evidence in bar of the action, and must be presumed to have been brought to the attention of the Court below." *Bullitt vs. Musgrave*, 3 *Gill*, 32.

The objection seems to have proceeded from the Court, and if the testimony was admissible in bar of the action, upon the ground that it *tended to show* that the defendants, in dealing with Bell, gave him exclusive credit, it appears to us it should have been admitted.   It is like the case of an instruction offered by the Court "*mero motu*," in which it is held that it must cover all the aspects of the case. "The plaintiffs' right of action on the contract," assuming the agency of Bell, could only be disputed on the ground that the defendants gave exclusive credit to the agent Bell.

The testimony tending to show this was, that Bell, at the time of entering into the contract, was a general flour merchant in Baltimore, selling on his own account, as well as on commission, and was in excellent standing and credit; that after the absconding of Bell, the defendants demanded, at his store, security for the performance of the contract, and failing to receive it, they *at once bought* flour to replace that which he had agreed to furnish at $8.75.   That the price of flour, in the opinion of the best informed merchants, would rise to $12 per barrel.   That the plaintiffs *were unknown to the defendants* at the *time of the contract, and when they* disclosed themselves were insolvent merchants, without any credit or standing, and non-residents of the State, and they refused to give them credit or take them for the contract, unless they would give security for the contract.

Whether the appellants gave exclusive credit to the agent, Bell, was a question for the jury. *Thompson vs. Davenport*, 9 *Barn. & Cres.*, 78.   Without encroaching on their province, it is not too much to say, it had a tendency to prove that fact.   To exclude such testimony from their consideration, was to deprive the appellant of the privilege of asking an instruction based upon the hypothesis which such evidence might have warranted.   There is a

strong legal presumption that, as a question of intention, credit is given exclusively to the agent in such cases. *Story on Agency*, 268, 290.

The 3d and 4th Exceptions. The appellant, after the plaintiff had closed his case, offered again the testimony set forth in the second bill of exceptions, and in addition thereto offered to prove "the existence of an usage among a certain class of flour dealers in Baltimore city, accustomed to deal in contracts for that article, under which either the buyer or seller in such contracts might demand security, by way of a margin, to be put up by both, whenever the faithful performance of such a contract should be considered doubtful by either party; * * * that the existence of this usage was well known to the defendants and to Bell; that it was a special usage of each of them in their business; that they had each of them admitted it to be such, and in a conversation between them, had stated to each other that all their contracts, respectively, were made subject to and in reference to the usage," &c. The authorities distinguish between a general usage, so well established that the knowledge and adoption of it is presumed, from the fact of its existence, of which the Courts, *ex officio*, take notice, and special or particular usages, which must be shown to have been known to and adopted by the parties to the contract, and which, however local or partial, when proved to be so known and adopted, will control the contract. The former must be general in the whole city or place, or among all persons in the trade, and not the usage of a particular class only, or the course of practice in a particular bank, to whom, or which, the party is a stranger. *Gabray vs. Lloyd*, 3 *B. & C.*, 793. 6 *H. & J.*, 172. 1 *H. & G.*, 248. *Mer. Mut. Ins. Co., vs. Wilson*, 2 *Md. Rep.*, 240. In *Foley & Woodside vs. Mason & Son*, this Court said: "And, in any case, a usage to be admissible must be proved to be known to the parties, or be so general and well established that knowledge and adoption of it must be presumed, and it must be certain and uniform. Indeed it may be

added that usages, in general, have fallen in later years much into disfavor with the Courts as they have been disliked and discountenanced in earlier times by the ablest of judges;" citing in support of this position *Stover vs. Whitman*, 6 *Binney*, 416, Chief Justice Tilghman; and *Donnell vs. Ins. Co.*, 2 *Sumner*, 366, by Story, Justice. "The evidence of usage in this case was held too vague and unmeaning, to warrant, upon any principles, the Court to submit any proposition to the jury based upon it." * * * "In this particular, this case is wholly unlike the case of *Powell vs. Bradlee*, 9 *G. & J.*, 221; there, one witness proved that it was *then* and *now is*, the *general* usage among flour merchants in the City of Baltimore, it is the *general and constant* usage; upon this evidence the Court said very properly, that the question of usage was rightly left to the jury." 6 *Md. Rep.*, 50. The effect of usage, on certain clauses of a policy of insurance, being under consideration, in the case of the *Merchants Mutual Ins. Co.*, vs. *Wilson*, 2 *Md. Rep.*, 217, this Court after reviewing all the previous decisions in this State on the subject, adopts the language of *Duer on Ins.*, as follows: "The proposition that a usage must be general in order to bind the parties, refers exclusively to the cases in which the knowledge of the parties and their intention to adopt the usage are inferred merely from the fact of its existence, but when their knowledge or intentions are established by other direct or circumstantial proof, their contract will be governed by the usage, however local or partial, in reference to which it is proved or presumed to have been made." *Vide* also *Grove vs. Brien*, 1 *Md. Rep.*, 438. *Burroughs vs. Langley*, 10 *Md. Rep.*, 250. Notwithstanding the disfavor expressed towards this species of evidence, its claims to consideration are so established and admitted, that we cannot without judicial legislation, exclude it, when it is presented. The judges who deprecate its admission, still acknowledge its authority. Recognizing these precedents, the evidence of usage offered by the appellants was not admissible as a general usage, so well

known and established, that its knowledge and adoption as a part of the contract, would be presumed, because in the tender of evidence it was described as "an usage among a certain class of flour dealers in the City of Baltimore," thus negativing that *generality* which the decisions require as a basis of the presumption of its adoption; but the appellee further offered to prove, that the usage was in existence at the time the contract was made, was well known to the appellants and said Bell, had a well known and recognised meaning, and imputing security, in the shape of money to be put up by both parties, had been acted upon previously in numerous cases of time contracts for flour in Baltimore City, where the contract was in writing, and no reference was made in it to the usage; "that it was well known to the appellants and Bell, *it was a special usage of each of them in their business,* that *they had each of them admitted it to be such, and in conversation between them, had stated to each other, that all their contracts respectively, were made subject to and in reference to the usage,* giving either party the right to call for a margin on the contract as stated."

All the qualities of a special usage are here proposed to be proved. Knowledge, certainty, reciprocity, and uniformity with express application to the contract sued upon; for it does not appear that the conversation referred to, might not have been subsequent to the date of the contract.

It is objected, that it was not proposed to prove, that the usage included a right to rescind the contract, upon non-compliance with its terms. This right is a legal consequence of non-compliance, an inference of law. If the terms or conditions of the usage had been incorporated into the contract, it would have been the province and duty of the Court to instruct the jury, as to the legal effect of the refusal of either party to comply with its conditions. The object of such conditions could only be indemnity or protection from failure to comply. It was preventive; to be construed so as to give equal and full protection to each.

Oelrichs & Lurman, vs. Ford.

To effect this entirely, the right to rescind was essential; otherwise the consequences of failure might be irretrievable. No amount of damages, against an insolvent contractor, would save harmless the other party. One, who upon being required to give reasonable security for the performance of his contract, would refuse to comply, having stipulated to do so, might reasonably be expected to refuse to perform the contract at its maturity. This usage redeemed the contracts on time from the odium of mere gambling transactions,—which have unfortunately become so frequent,—and gave a *bona fides* to operations which would otherwise be deemed unworthy of commercial integrity. Whether regarded as evidence tending to bar the right of action on the contract, or reduce the amount of damages, we think the testimony offered to prove a special usage between the appellant and the supposed agent, Bell, should have been admitted. This aspect of the case, reconciles it with the decision in 23 *Howard*.

The defendants in 23 *How.*, 62, did not offer to prove a partial or special usage, but a general usage or custom of trade in the city of Baltimore. The opinion of the Court was, "that the defendants wholly failed to prove any general or established usage or custom of the trade in Baltimore, as claimed in the defence." Every witness called on their behalf fails to prove facts essential to make out the custom in the sense of the law; on the contrary, most of them expressly disprove it.

The distinction recognised and adopted by this Court in the case of the *Merchants·Mutual Ins. Co., vs. Wilson*, was not adverted to; the facts of the case perhaps did not require it, yet however profound our respect for the high tribunal which decided the questions in 23 *How.*, if that decision conflicted with that of this Court, on questions of commmercial law merely, we should be bound to adhere to the latter.

The instruction granted by the Court, at the instance of the plaintiff, the appellee, which is the ground of the ap-

pellants' fourth exception, positively excludes from the consideration of the jury, the consideration of the facts offered to be proved by the defendant, and rejected by the Court, and which have been the subjects of the second and third exceptions.   It allows no consideration of the effect of giving exclusive credit to the agent, by the defendants, or of the special usage offered to be proved by the appellants, and is therefore at variance with the principles and authorities before cited in commenting upon those exceptions, and, as such, in my opinion was erroneous.

*Judgment affirmed.*

(Decided June 1st, 1864.)